# IN THE MATTER OF APPLICATION TO APPOINT A GUARDIAN FOR MARY STORICK, AN ALLEGED INCOMPETENT PERSON.[1]

*Appointment of guardian—Mental incompetency.*

1. How. Stat. §§ 6314, 6315, expressly confine their operation to a person who is not *compos mentis,* and whose mind has become affected by old age or other causes so as to lose its normal condition.    The statute does not say merely " *incompetent,*" but " *mentally* incompetent."    It does not refer to persons who are sane, but not, perhaps, as wise or intelligent as some other persons, but applies to those whose mind is so affected as to have lost control of itself to such a degree as to deprive the person afflicted of sane and normal action.

2. Unless the petition, in such a case, either follows the *words* of the

---

[1] See *North v. Joslin,* 59 Mich. 624.

statute, or uses language and states facts fully equivalent, it can not give jurisdiction.   This is a class of cases in which the citizen is sought to be deprived of both liberty and property, and those who seek to accomplish such a result must do so upon statements that, if true, leave no doubt that the case falls within the statute.

3. As stated in the *Case of Brown*, 45 Mich. 328, " the statute contemplates the existence of insanity, or of mental infirmity that is equivalent in destroying mental competency."

4. Persons who can be safely trusted with taking care of themselves are seldom, if ever, liable to guardianship.   Neither is there any legal standard of business wisdom.   Men may be unwisely speculative or unwisely penurious, but this is not insanity; and every man may spend or save as he chooses, as long as he does not come within the prohibitions of law.   As long as he possesses a mind normally sound, he is entitled to free agency.   It is as cruel and unlawful to interfere with the liberty of the old as of any one else; and the law cannot favor or permit this liberty to be diminished.

Error to Berrien.   (Smith, J.)   Argued January 21, 1887. Decided February 3, 1887.

.Application to appoint a guardian for an alleged incompetent person.   Order for such appointment affirmed on appeal in the circuit court, and the appellant brings error.   Proceedings in probate and circuit courts quashed.   The facts are stated in the opinion.

*Clapp & Bridgman,* for appellant.

*Edward Bacon,* for petitioners for appointment of guardian.

CAMPBELL, C. J.   Mary Storick, an elderly woman who was given by her husband's will control over all his realty, consisting of three farms, during her life, and the use of all his personalty, had lived on and managed the home farm from her husband's death, in the early part of 1884, until September, 1885, when her son David and her daughter Mary began these proceedings in the probate court for Berrien county.   Her husband's will left the remainder in one

farm to David, and in another to her son Simon, both of whom she had allowed to enjoy their farms in advance. Her daughter Mary, who has the remainder in the home farm, had, up to that time, lived with her mother on it. Some dissensions seem to have arisen in the family, and this application was evidently the result. The judge of probate granted the guardianship, and it was affirmed on appeal by the verdict of a jury, who were given in charge the entire issue, and found no facts. The verdict, which is put in a statutory form, was not the result of any issues laid before them, and is the form which the court adopted as the result of their general finding; the court having ordered them to find generally.

The jurisdictional facts set out in the petition in the probate court, so far as they relate to her condition, were as follows:

"That she is feeble in body and mind, so that she is not able to manage her business affairs with a proper degree of judgment and skill; her mind being so weak that she can be influenced by others in any direction they may see fit to lead her, even right against her own interest, and the interest of her family, and can, by any person almost, be induced to part with her property without just compensation therefor."

Upon the appeal at the circuit, instead of leaving specific issues to the jury, which in such a case as this are desirable, if not absolutely required, they were, as already stated, ordered to find a verdict, not even generally as to competency, but merely for the one party or for the other. This makes it impossible to know on what idea they acted.[1] The charge did not require them to pass upon insanity or idiocy in any form or degree. They were only required to ascertain whether, in their opinion, she could manage, not property generally, but all the farms and personalty, a large part of which she had not attempted to manage, but had left to her two sons. They were told that the fact that Simon had

---

[1] See *Loomis v. Armstrong*, 49 Mich. 521; S. C. 63 Id. 355.

great influence over her, if true, would authorize a guardianship; and from beginning to end of the charge great stress was laid upon the danger of its being squandered. Among other refusals, the court refused to charge the following, and gave no equivalent instructions:

"The infirmity which justifies the appointment of a guardian over the person and property of Mrs. Storick must be equivalent to insanity. It must be such as renders her incompetent to have charge of any affairs, or to do any business. If it does not extend that far, then she should not be found by you incompetent."

Also:

"You should not find the contestant incompetent, if she is able to take care of herself in the home and place devised to her by her husband."

Also:

"If she has sufficient sense and judgment to transact the business affairs pertaining to her situation in life, then she is not to be found by you incompetent."

Also:

"If you believe from the testimony that Mrs. Storick is possessed of ordinary sagacity and insight into affairs, so that she knows how to care for her house, and table and clothing, to deal and transact ordinary affairs, and is not insane, nor so foolish or imbecile as to have no mind or intelligence regarding ordinary matters and affairs which she is accustomed to know of, then you are not to find her incompetent."

These were all proper requests.

There are two classes of cases in which guardians may be appointed, on proper showing, over persons who are of mature years. One is where "the person in question is incapable of taking care of himself, and managing his property," by reason of extreme old age, or any other cause. How. Stat. §§ 6314, 6315. The other is the case of spendthrifts. Section 6317.

The petition in this case does not undertake to treat Mrs. Storick as a spendthrift, and the testimony shows that such

a pretense would be ridiculous. It was meant to be filed under the earlier sections.

The sections 6314 and 6315 expressly confine their operation to a person who is not *compos mentis*, and whose mind has become affected by old age or other causes so as to lose its normal condition. The statute does not say merely "incompetent," but "mentally incompetent." It does not refer to persons who are sane, but not, perhaps, as wise or intelligent as some other persons. It applies to those whose mind is so affected as to have lost control of itself to such a degree as to deprive the person afflicted of sane and normal action.

Unless the petition either follows the words of the statute, or uses language and states facts fully equivalent, it cannot give jurisdiction. This is a class of cases in which the citizen is sought to be deprived of both liberty and property, and those who seek to accomplish such a result must do so upon statements that, if true, leave no doubt that the case falls within the statute.

In the *Case of Brown*, 45 Mich. 326, the petition was much fuller and more pointed than that now before us; for it stated that Brown was old and infirm, and was "incompetent to have the care, charge, and management of his property." It further set forth that he was addicted to intoxication to such an extent as to be liable to become the victim of designing persons, and that, through intoxication and foolish speculation, he had wasted more than half of a considerable estate.

That petition was held substantially and fatally defective, and not equivalent to an averment of mental incompetency. As there stated:

"The statute contemplates the existence of insanity, or of mental infirmity that is equvalent in destroying mental competency."

The allegations before us, meager and uncertain as they are, went further than even the petitioners ventured to go

in their testimony. There is no testimony whatever in the record which tends to show that Mrs. Storick is *non compos.* She is shown by everybody—and even the testimony of petitioners does not show otherwise—to have been in the same condition as when her husband saw fit to leave her in charge of all his property, and as she had been always, so far as we can judge. She is apparently not educated, and possibly, although this is hardly borne out by most of the testimony, of no great brightness of intellect; but she has acted with average judgment and economy, has been prudent and careful, and has given no reason for any of the insinuations of petitioners beyond objecting more or less to a suitor of her daughter, who is old enough to act for herself if she chooses, and making moderate gifts from her savings to two of her daughters less favored by the will than petitioners. Objection to such rational liberality does no particular credit to persons who desire to prevent the exertion of influence to hamper her free action; and such gifts from a mother out of her savings indicate good sense and good feeling rather than imbecility. Had the issues been presented in proper form on the record, and laid plainly before the jury, we cannot believe they could have found them established.

Not only was there error in refusing the charges asked as above noted, but the charge in its general tenor left the jury under a wrong impression as to the policy of the law concerning old people, even when infirm, as she was not.

Persons who can be safely trusted with taking care of themselves are seldom, if ever, liable to guardianship. One may be so sick or crippled as to be compelled to leave his affairs in the hands of servants or agents, and is no more incompetent for that reason than a very wealthy man is who cannot possibly look after the details of his business. Neither is there any legal standard of business wisdom. Men may be unwisely speculative or unwisely penurious, but this is not insanity. A jury of merchants might very easily approve or

disapprove where a jury of persons unaccustomed to commercial ventures and expenditures would think the reverse. Every man may spend or save as he chooses, so long as he does not come within the prohibitions of law. As long as he possesses a mind normally sound, he is entitled to free agency. It is as cruel and unlawful to interfere with the liberty of the old as of anyone else; and the law cannot favor or permit this liberty to be diminished.

The case shows no reason for interference with Mrs. Storick, and there was no jurisdiction to attempt it. The proceedings in both courts must be quashed, with costs of all the courts against petitioners.

The other Justices concurred.