IN THE MATTER OF THE APPLICATION FOR THE APPOINTMENT OF A GUARDIAN FOR NANCY TEMPEST.

*Guardian for imbecile—What must appear to justify appointment.*

To justify the appointment of a guardian for an alleged imbecile, it must appear that the person is an imbecile and a resident of the county.

Where the infirmity complained of does not render the person

incompetent to have charge of her affairs or transact business, and the evidence shows that she has exercised in relation to her affairs judgment, economy and prudence, such person is not the subject of guardianship on the ground of imbecility.

*Decided March 21, 1889.*

THE facts are stated in the opinion.

*Bateman & Harper,* for Nancy Tempest.

*Judge Wm. Worthington* and *Frank M. Coppock,* for petitioners.

GOEBEL, J.

Hannah Donaldson and Mary Jane Stanley allege in their petition that they are the daughters of Nancy Tempest, a resident of this county, who is the owner of an estate consisting of real and personal property; that the said Nancy Tempest is an imbecile, and is totally incapable of properly taking care of and preserving her property, and is, in fact, disposing of the same without consideration, and is otherwise improvidentially and injudiciously administering and caring for her said estate, so that the same will be entirely lost, unless the court shall interpose. And they pray for the appointment of a guardian to take charge of the estate of the said Nancy Tempest.

To this petition Nancy Tempest files her answer, maintaining that she is not an imbecile, or that she is incapable of taking care of, or preserving her property, or that she is disposing of the same without consid-

eration; that she is in good health physically, of sound mind, and entirely capable of managing her own affairs. Upon this issue the parties went to trial, and the testimony discloses the following facts :

Nancy Tempest is in the sixty-fifth year of her age. She came with her husband, Michael Tempest, from England · to this country forty years ago, without means. He established a little business of manufacturing earthen ware in which he was greatly assisted by her. As the business increased, it was enlarged, and became very profitable, and he was thereby enabled to accumulate property. He died in 1886, leaving a last will, in which he made provision for his wife, and devised the remainder of his estate to Hannah, Mary Jane, and James, his children, in equal shares, and constituted James a trustee to hold in trust, the shares of Hannah and Mary Jane during their lives, and to pay to them the income and profits; the fee to the children of Hannah and Mary Jane.

Nancy Tempest, in her early days, was a woman possessing great physical endurance, of robust constitution, of positive character, attentive and economical in the management of her household. Her husband would make her an allowance for household expenses, and out of this, during a period of many years, she was enabled to save quite a sum. With this amount, she purchased real estate, and made investments in

GOEBEL'S PROBATE REPORTS 203

Application for the Appointment of a Guardian for Nancy Tempest.

gas stock, street railroad stocks and Little Miami R. R. stock.

Hannah and Mary Jane were married, and after that did not make their home with their parents. James is unmarried, was for many years in the employ of his father, always devoted to his parents, exemplary in his habits, and made his home with his parents.

Nancy Tempest, desiring to make a disposition of her property to some extent, during her lifetime, and considering the devotion and attention which James had given her, indorsed, transferred and assigned to him, certain stock to the value of $5,000, and executed a paper writing in which she divided the balance of the stocks in three parts, between Hannah, Mary Jane and James. These stocks were to be held by James in trust during her lifetime, and he was to pay to her the income and after her death, to make an equal distribution between Hannah, Mary and James, after deducting therefrom, an amount that Hannah had received from her father, and an amount James had loaned her, from her share.

She also executed a paper writing in which she divided her real estate into three parts, giving to Samuel Hatheral the shares of Hannah and Mary, in trust, to pay them the income during their lives, devising the fee to their heirs; and giving to James his share absolutely.

Her reason for making such disposition in reference

to Hannah and Mary Jane, was that her husband had made a similar disposition of his property. She had confidence in her daughters, but not in their husbands. And this was a subject much talked about between her husband and herself, and was the reason why he made such disposition.

About five years ago, Mrs. Tempest went to Florida, and, while there, was seized with a violent attack of dysentery. She returned home, and was quite ill. Dr. Trush was called and attended her until about the middle of February. He was succeeded by Dr. Bradford, who said that she had recovered from the attack of dysentery, when he found that her mind was affected. She could not carry on a connected conversation, would forget what she had said, and seemed to have no memory. He advised that Dr. Everts be consulted.

Thereupon Mrs. Tempest, together with her husband, did see Dr. Everts. He examined and questioned her, and found that she was suffering from premature *senile dementia*, and that it was organic. He does not remember whether he prescribed for her, and did not see her again until four years thereafter. He then had occasion to see her again, and this examination confirmed him as to his first diagnosis.

Mrs. Tempest made her home for a considerable part of this time with Mrs. Donaldson, her daughter. She noticed that her mother was restless and flighty at

night, would talk incoherently, and attempted to jump out of the window. She was irritable, and at times, melancholy. After the first attack, Mrs. Tempest made a trip to England, attended to the duties of her household, nursed her husband and one daughter through their last illness, and there is no further evidence which would call forth any criticisms upon her conduct, until in the fall of 1888, when she was again attacked with dysentery and rheumatism.

Dr. Owens was then called to attend her, and he observed nothing which would disclose any mental trouble. She seemed to have recovered, and then went to her daughter Mrs. Stanley. Mrs. Stanley says that she was restless and despondent, was feeling badly and Dr. Countryman was called to attend her. He came to see her three times, prescribed for a stomach derangement, and did not observe any mental unsoundness. Fearing that her mental troubles would return, she again consulted Dr. Everts ; and this is the occasion already referred to, in Dr. Everts' testimony.

She returned home, and Dr. Geohegan was frequently called to attend her for rheumatism and other ailments. He observed nothing unusual in her conduct, nothing that attracted his attention as to any mental trouble.

Dr. Lyle, a friend of the family, frequently visited her and observed nothing wrong with her mind. During

the progress of this case, Dr. Comegys was called to make an examination with reference to her mental condition.  After a careful examination, he was of the opinion that she was not suffering from *senile dementia*, or that she was a person of unsound mind.

The petitioner called one—Nettleton, who had been employed as a nurse, and had remained four or five weeks in attendance upon Mrs. Tempest.  Her testimony does not throw any light upon the question whether Mrs. Tempest is of unsound mind; it is directed exclusively, to the conduct of James with reference to his mother, and the influence which he seemed to exercise over her.  Nor does the testimony of Mrs. Craig, who was an old friend of Mrs. Tempest, throw any light upon this subject.

About the time she lost her husband and daughter, she had been seriously ill, and was then suffering from some stomach trouble.  Dr. Priest, a a very intelligent gentleman, pastor of Westminster Church on Price's Hill, a neighbor and a friend of the family, and a frequent caller before and after the death of Mr. Tempest, having had an opportunity of observing her conduct, found her to be an intelligent, rational person of more than average firmness of character.

Mr. Oldham, a member of the Bar, who had made his home with Mrs. Tempest, from the middle of July to the middle of August, 1888, and had spent a number of evenings during that period with her, found

GOEBEL'S PROBATE REPORTS. 207

Application for the Appointment of a Guardian for Nancy Tempest.

her exceedingly quaint and interesting. He was struck with the shrewdness of her observations, and by the force and clearness of the expression of her ideas. They conversed upon current topics, discussed religion, values of property, investments, etc.

Samuel Hatheral, Mrs. Hatheral and Mrs. Lyle, all have known her for many years, and have found her to be a woman of positive character and more than average firmness and intelligence.

Prior to 1872, no authority existed for the appointment of guardians for imbeciles. By section 6302 of the Revised Statutes, the authority is extended. Under the prior statute (section 41 S. & C. 387), three things were requisite to give the court jurisdiction. 1st. That the person was an idiot or a lunatic. 2nd. That he was a resident of the county, having a legal settlement in some township thereof. 3d. That such appointment was necessary for the preservation of his property. Under the present statute, the necessity for the appointment of a guardian to preserve property is omitted, leaving but two things requisite, namely, that he is an idiot, lunatic or imbecile, and a resident of the county.

Our first inquiry, therefore, would be, Is Nancy Tempest an imbecile? If she is, it must follow that her property and the management thereof, go to the custody of a guardian. Until permanent disorder is proved to exist, no presumption of insanity can

arise. Sanity, being the normal condition of the human mind, is favored by the general presumption, and the burden of proof is upon those asserting the contrary.

Mere weakness of mind is not a ground for interference. If there be a capacity to manage as the result of consecutive reasoning, although the management might not be such as an intelligent, vigorous and skillful mind may approve, a jury will not be justified in finding the person insane. *Re. Schneider*, 59 Pa. St. 328.

Weakness and infirmnity coupled with old age, and when easily susceptible of influence which would authorize the setting aside of a will, would not amount to unsoundness, to warrant the appointment of a guardian. *Re. Collins*, 18 N. J. Eq. 253.

It must appear that the mind of the person is so unsound, that he can not apply his faculties to the management of his affairs or the government of himself. *Re. Lindsley*, 15 Atlantic Reporter 1 (Supreme Court of Errors and Appeals, N. J.)

Nor would the fact that memory is greatly impaired, warrant the appointment of a guardian. *Fairfield* v. *Gullifer*, 49 Me. 360 ; 4 N. H. 60.

Nor would the fact that a person, less careful of his property than formerly, or subject to the influence of extravagant children, wasting his property,

justify the appointment of a guardian. *Darling* v. *Bennett*, 8 Mass. 129.

Chief Justice Campbell, in the case of *Re. Storick*, 64 Mich. 685, said that the following charge to the jury requested by counsel, but refused by the court, was proper: "The infirmity must be such as to render her incompetent to have charge of any affairs, or do any business. If it does not extend that far, then she should not be found by you incompetent. If you believe from the testimony that Mrs. Storick is possessed of ordinary sagacity, and insight into affairs, so that she knows how to care for her house and table, and clothing; to deal and transact ordinary affairs, and is not so insane, nor so foolish or imbecile as to have no mind or intelligence regarding ordinary matters and affairs which she is accustomed to know of, then you are not to find her incompetent."

Whether the court can find Nancy Tempest to be an imbecile, depends upon the testimony as presented. The recognized ability of Dr. Everts as an expert on insanity, has made us waiver somewhat in our conclusions. Whatever may be the state of her mind, the testimony does not warrant us in finding that Nancy Tempest is suffering from *senile dementia*, and, to this extent, we think Dr. Everts was mistaken in his diagnosis. That Nancy Tempest was suffering from some mental trouble four years ago, is apparent,

but we are not prepared to say, from the evidence before us, that she is an imbecile.

We have had opportunity to examine and observe her for many days, during the progress of this case. Our conclusion is, that, while she is not an educated woman, she has exercised in her relations to her affairs, judgment, economy and prudence, and we ought not to interfere.

It is not within our province in this case, to determine whether she has testamentary capacity, nor are we called upon to say whether the paper writing, in reference to the disposition of her personal property, was a just or unjust disposition, or whether the gift to James, was unworthily bestowed. The acts done do not call for an expression as to her mental condition.

The application is denied and the petition will be dismissed.