GEORGE C. PALMER, SUPERINTENDENT OF THE MICHIGAN ASYLUM FOR THE INSANE, v. GEORGE M. BUCK, CIRCUIT JUDGE OF KALAMAZOO COUNTY.

*Insane persons—Commitment to asylum—Jurisdiction of probate court—Habeas corpus.*

1. An order of commitment to the insane asylum which states that the female committed was a *resident* of the State Industrial Home for Girls, in Lenawee county, does not show upon its face that she was serving a term of imprisonment at that home.

2. The laws of this State make a distinction between insane criminals, and those insane persons who are not criminals; the former being governed by Act No. 190, Laws of 1883, as amended (3 How. Stat. chap. 47a), and the latter by Act No. 135, Laws of 1885 (3 How. Stat. chap. 46).

3. An order of commitment, made by the judge of probate of Lenawee county, of a female to the Michigan Asylum for the Insane at Kalamazoo, which recites that it is made upon a hearing on a petition on file which alleges that the female is a resident of the Industrial School for Girls, in said county, and is insane, and prays that she may be admitted to said asylum, there to be supported at the expense of said county, recites sufficient facts to give the probate court jurisdiction on the basis of her being such resident.

4. The fact that the superintendent of the insane asylum is liable

to be harassed with a suit for false imprisonment for detaining an inmate under a void commitment shows sufficient interest in him to ask for a review of an order discharging such inmate on *habeas corpus* proceedings.

5. The writ of *habeas corpus* penetrates the walls of insane asylums as fully and freely as any other place where persons are illegally restrained of their liberty; and orders and decrees of probate courts possess no immunity different from those of other courts when they proceed without jurisdiction.

6. There *may* be some doubt whether Act No. 190, Laws of 1883, applies to insane criminals confined in the State Industrial Home for Girls; but as girls between 10 and 17 years of age may be sentenced to that institution when convicted of being disorderly persons, or of any offense not punishable by imprisonment for life, there is no reason why the statute should not apply to this class of insane persons as well as to those who are serving sentence in the other penal institutions of the State.

7. The person upon whom a writ of *habeas corpus* is duly served is required by How. Stat. § 8565, to state in his return, plainly and unequivocally, the authority and true cause of the imprisonment or restraint complained of, setting forth the same at large, and, if by virtue of any writ, warrant, or other written authority, to annex a copy thereof to his return, and to produce the original to the court or officer before whom the writ is returnable. But on a review of such proceedings by *certiorari* in the Supreme Court, where it appeared that this statute was not complied with, but that no objection was made, and that the petitioner produced the order of commitment under which she was detained on the hearing, the Court regarded the order as the authority for such detention.

8. Where, during an investigation by a probate judge of an application for the admission of an indigent insane person to the insane asylum, it appears that such person has not acquired a legal settlement in his county, he is not ousted of jurisdiction, nor can he refuse for that reason to make the desired order of admission; and he should order the expense to be paid by his county in the first instance, leaving the question of residence and of the county finally liable for such support to be determined as provided by section 25 of Act No. 135, Laws of 1885.

9. The order for discharge in this case is vacated, without costs, but without an order remanding the person discharged to the insane asylum, under the precedent established by *Hamilton's Case*, 51 Mich. 174.

83 MICH—34.

*Certiorari* to review *habeas corpus* proceedings resulting in the discharge of an inmate of the insane asylum. Argued November 20, 1890. Order of discharge vacated December 5, 1890. The facts are stated in the opinion.

*Osborn & Mills*, for plaintiff in *certiorari*.

*Hawes & Luby*, for defendant in *certiorari*.

CHAMPLIN, C. J.   On September 19, 1889, Mary Vetter was brought to the Michigan Asylum for the Insane at Kalamazoo by Mrs. Margaret Scott, and delivered into the custody of the superintendent, under the authority of an order made by the probate court for Lenawee county, which was in the words and figures following:

"STATE OF MICHIGAN, }
"County of Lenawee.  }

"At a session of the probate court for the county of Lenawee, holden at the probate office in the city of Adrian, on the 19th day of September, in the year one thousand eight hundred and eighty-nine.

"Present, R. B. ROBBINS, Judge of Probate.

"*In the Matter of Mary Vetter, an Indigent Insane Person.*

"This day having been assigned for hearing the petition, now on file in this court, of Margaret Scott, superintendent of the State Industrial Home for Girls, alleging that Mary Vetter, a resident of the Industrial Home for Girls, in said county, is insane, and praying that said Mary Vetter may be admitted to the Michigan Asylum for the Insane at Kalamazoo, there to be supported at the expense of the county in which it is shown she is a resident; and having duly notified the said Mary Vetter (there being no known relative of the said Mary Vetter in said county), also D. B. Morgan, prosecuting attorney for said county, and Wm. H. Knight, supervisor of the town of Adrian, in which said Industrial Home for Girls is situate, and in which said insane person at present resides, of the time and place of hearing said petition, and having filed the certificates, taken under

oath, of Drs. Abram Stephenson and Wm. E. Jewett, two legally qualified physicians, and having taken the testimony of Wm. E. Jewett and Margaret Scott, credible witnesses, and having inquired into her settlement, and having fully investigated the facts in the case, without the verdict of a jury as to the question of insanity and indigence, I, the judge of probate in and for said county, do find that said Mary Vetter is in indigent circumstances, and certify that satisfactory proof has been adduced showing the said Mary Vetter to be insane; that she has not acquired a legal settlement in said county of Lenawee, but is a resident of the county of Kalamazoo; and that her estate is insufficient to support her under the visitation of insanity.

"It is ordered that the said Mary Vetter be admitted to the Michigan Asylum for the Insane, under and according to the provisions of section 23 of Act 135, Laws of 1885, there to be supported at the expense of the county of Kalamazoo until restored to soundness of mind, if effected within two years, and until otherwise ordered.

"RICHARD B. ROBBINS,
"Judge of Probate."

On June 25, 1890, Mr. W. A. Luby, acting as attorney for Mary Vetter, filed with Hon. George M. Buck, circuit judge of Kalamazoo county, a petition for *habeas corpus*, which was granted, and directed to George C. Palmer, the superintendent of the Michigan Asylum for the Insane. On account of the absence of Dr. Palmer from the county, the writ was served upon Thomas R. Savage, the assistant medical superintendent for the asylum, who produced the body of Mary Vetter before the circuit judge, and made return to the writ, setting up, in substance, that Mary Vetter was detained at the asylum by authority of the order of the judge of probate of Lenawee county, and that she had been cared for and treated in the asylum since the date of her admission, and giving a history of her case. No examination was made as to the sanity of Mary Vetter, and no proofs offered to show her mental condition. The court, upon

examination of the commitment referred to in the return, made the following order:

## "In the Matter of Mary Vetter.

"It appearing from the return of the writ of *habeas corpus* heretofore issued out of this court for the relief of Mary Vetter, that she, the said Mary Vetter, is detained at the Michigan Asylum for the Insane, and that such detention is without authority of law, it is ordered that said Mary Vetter be, and she is hereby, discharged and released from such unauthorized detention."

The grounds upon which the petitioner claimed a discharge may be reduced to three:

1. That Mary Vetter was not insane.
2. That the probate judge of Lenawee county acted without authority, and had no jurisdiction to make the adjudication and order under which she was detained.
3. That there were irregularities in the proceedings in the probate court which made her detention illegal.

The first and third grounds were not made to appear by any proof before the circuit judge, and the only question upon the merits is whether the order of commitment was fair upon its face, and sufficient to justify the superintendent in receiving and detaining Mary Vetter in the asylum.

There is nothing upon the face of the order of commitment to show that Mary Vetter was serving a term of imprisonment at the State Industrial Home for Girls. It merely states that she was a resident of the home. Had it shown that she was a convict serving sentence at this reformatory of the State, the probate judge would have had no jurisdiction under the provisions of section 23, Act No. 135, Laws of 1885, to make the order that he did. The laws of this State make a distinction between insane criminals, and those insane persons who are not criminals. The former are governed by Act No. 190, Laws of 1883, and the amendments thereto, and the

latter by Act No. 135, Laws of 1885, and the amendments thereto.

There may be some doubt whether the law of 1883 applies to insane criminals confined in the Industrial Home for Girls; but when it is seen that girls between 10 and 17 years of age may be sentenced to that institution who shall be convicted as disorderly persons, *or of any offense not punishable by imprisonment for life,* there is no reason why the statute should not apply to this class of insane persons as well as to those who are serving sentence in our other penal institutions. If the statute does not apply, then there is no statute which would authorize the inmates of this institution who become insane to be transferred to an insane asylum. The Industrial Home for Girls is a penal reformatory institution. It was at first called a "reformatory," and, although its name has since been changed, its character remains the same, the peculiar distinction being that when the authorities to whom that subject is confided shall be of the opinion that an inmate has reformed they may discharge her from imprisonment, although her sentence has not then expired. The Legislature, in the amendments made to the act in 1889, seem to have regarded the act of 1883 as applicable to the reformatory institutions as well as to the State prisons and houses of correction. See section 29, as amended by Act No. 179, Laws of 1889, where the Legislature has provided for the transfer back to the house of correction, prison, or reformatory from whence he came of any lunatic restored to reason.

In the *habeas corpus* proceedings before the circuit judge, the fact that Mary Vetter was, at the time of the action had by the probate judge, serving a sentence in the Industrial Home for Girls, might have been set up

by way of replication to the answer. But no such fact was alleged as a replication, although such fact is alleged in the petition for the writ.

The proceedings before the judge on the return of the writ was somewhat irregular. The law requires the person upon whom such writ shall have been duly served to state in his return, plainly and unequivocally, the authority and true cause of such imprisonment or restraint, setting forth the same at large, and, if by virtue of any writ, warrant or other written authority, to annex a copy thereof to his return, and produce the original to the court or officer before whom the writ of *habeas corpus* is returnable. This Dr. Savage did not do. But the petitioner produced the order under which she was detained, and, as no objection was made, we shall regard it as the authority for such detention.

By this order the probate judge purports to have acted under section 23 of Act No. 135, Laws of 1885. He recites that the petition states that Mary Vetter was a resident of the Industrial Home for Girls in said county, that she was insane, and praying that she might be admitted to the Michigan Asylum for the Insane at Kalamazoo, and there supported by the county in which she is shown to be a resident. There are enough facts recited to give the probate court jurisdiction on the basis of her being a resident of Lenawee county. He gave proper notice to the officers whom the law required to be notified in such case. He had jurisdiction over the person and subject-matter, and proceeded with his investigation, in the course of which he became satisfied that instead of being a resident of Lenawee she was a resident of Kalamazoo county. This did not oust him of jurisdiction. Section 25 of the act provides that whenever the probate judge of a county before whom an indigent insane person

may be brought shall find that such person has not acquired a legal settlement in his county, he shall not for that reason refuse to give the order to admit the insane person into the asylum, but in that case he shall make separate reports, etc. The object of the law is to provide an asylum where the indigent insane may be cared for and treated. This is the main object. The other pertains to the expense, and upon what county it shall be cast. The law requires that the county in which the indigent insane person resided shall pay the expense. The probate court should have ordered the expense to be paid by Lenawee county in the first instance, in accordance with the petition, and then the law provides a method of determining the residence and the county which shall support such person, if settled in any county in the State. But such error does not render his adjudication upon the insanity of Mary Vetter invalid, or make his order void based upon such adjudication.

The order of commitment was fair and regular upon its face, so far as it conferred authority upon the superintendent of the Michigan Asylum for the Insane at Kalamazoo to receive and detain Mary Vetter as an inmate of such asylum, and upon the showing before the circuit judge she should have been remanded.

It is contended that Dr. Palmer has not such an interest in the proceedings as authorizes him to sue out this writ. If, however, the order under which he detained Mary Vetter was void, he would be liable to be harassed with a suit for false imprisonment, and we think this fact shows sufficient interest in him to ask a review of the adjudication by which she was discharged.

The plaintiff claims that the writ should have been served upon him. But this contention is answered by How. Stat. § 8610.

I quote the following from the brief of plaintiff's counsel:

"It is probably not very important whether Mary Vetter is returned to the asylum under the circumstances or not; but it is highly necessary that a decision should be made by this Court determining specifically the extent of the powers of courts and judicial officers to review upon *habeas corpus* the orders and decrees of probate courts admitting patients to the insane asylums of this State, and their right to discharge patients therefrom upon *habeas corpus.*"

In reply to this it is sufficient to say that the writ of *habeas corpus* penetrates the walls of insane asylums as fully and freely as any other place where persons are illegally restrained of their liberty, and that the orders and decrees of probate courts possess no immunity different from those of other courts when they proceed without jurisdiction.

Under the intimations contained in the petition for *habeas corpus*, and in the brief of counsel for plaintiff, we do not think it would be profitable to recapture or to remand Mary Vetter to the custody of the superintendent of the Michigan asylum; but under the precedent of *Hamilton's Case*, 51 Mich. 174, the order of discharge will be vacated, without costs.

The other Justices concurred.