PEOPLE v. HALL.

1. CRIMINAL LAW—INSANITY—PETITION FOR COMMISSION—INCOMPETENCY.

Act No. 238, Pub. Acts 1905 (5 How. Stat. [2d Ed.] § 15408), provides that when a person accused of certain heinous offenses shall appear to be insane or shall have escaped indictment upon the grounds of insanity or shall have been acquitted for that reason, the court shall make inquiry to ascertain whether the insanity continues; also that any person under confinement charged with such offense who shall appear to be insane shall be examined by the court which may summon necessary witnesses to aid in the examination and, if necessary, the court may call a jury for that purpose; that if his insanity is established the accused may be imprisoned in the asylum until restored to his right mind. Respondent was charged with the crime of murder. On a petition of the prosecuting attorney alleging upon information and belief that respondent was insane when he committed the crime and asking the court to investigate the mental status of the accused, corroborated by affidavits of four citizens that supported the averments of the petition, the court instituted an examination into the competency of the respondent, who was represented

by counsel at the hearing. By an order of the court a commission consisting of the prosecuting attorney and three physicians was appointed, and on the examination witnesses were sworn. No one expressed an opinion that respondent was insane, but all testified to a weakened or undeveloped condition of mind. The physicians were not sworn as witnesses, but filed a report which the prosecutor prepared, and which was not made under oath, containing findings that the accused was *non compos mentis*, that he belonged to the class known as imbeciles and that his condition was due to retardation of mental development and that it then continued to exist. The court entered an order based on the report that the respondent be committed to the State asylum for the criminal insane, until restored to his right mind. No finding was made by the court that the accused was insane. *Held*, that although the petition conferred jurisdiction, the court erred in omitting to have the physicians sworn as witnesses and that the order was void for failure to adjudge that respondent was insane.

2. SAME—IMBECILES — WITNESSES—PHYSICIANS—EXAMINATION OF RESPONDENT—MENTAL CAPACITY.

Construing said act with section 14 of Act No. 101, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 3781), which provides that the certificate of the committee appointed to examine into the mental condition of a person in probate court must contain the facts and circumstances on which the opinion of the experts is based; and when read in connection with section 15 of Act No. 25, Pub. Acts 1911, requiring the certificates of insanity to be made by two reputable physicians under oath, the legislative intent indicated is to require the physicians and other witnesses called in the case to be sworn.

3. SAME—MEDICAL EXPERTS—CERTIFICATE OF INSANITY.

The certificate of physicians appointed by the court to examine into the sanity of one accused of murder wherein the physicians state that the respondent was *non compos mentis* and point out in what particulars he was mentally defective and that he was an imbecile, sufficiently states that the respondent was mentally incapacitated although they did not certify that he was insane, in the language of the statute.

4. SAME—JURY TRIAL.

Failure of the court to call a jury was not fatal to the pro-

ceedings resulting in the commitment of an incompetent where respondent was represented at the hearing by counsel, who omitted to demand a jury.

5. SAME.

The report of the prosecutor and two physicians whom the court appointed to investigate the mental status of the accused reciting that he was *non compos mentis* and belonged to the class known as imbeciles and had not sufficient self-control to resist the impulse to do violent acts, was not fatally defective because it failed to state that respondent was insane.

6. SAME—REQUIREMENT OF PETITION—JURISDICTION.

The action of the court based upon the petition of the prosecuting attorney wherein it was set up that the accused was incompetent or insane sufficiently complied with the requirements of section 19 and was within the class of cases intended by the first portion of the section, *i. e.,* a person accused of the crime of murder who should appear to be insane although he had not been acquitted or escaped indictment.

7. SAME—INSANITY—JUDGMENT.

Where the order of the court fails to state that the evidence adduced at the investigation convinced the court of the respondent's insanity, there was no judicial determination of the basic fact requisite for the entering of such order.

8. SAME—BAIL—ACCUSED.

Though the respondent was admitted to bail after the filing of the information and had not been acquitted or indicted, he was one of the classes of cases intended by the statute.

9. CONSTITUTIONAL LAW—CRIMINAL LAW—APPEAL AND ERROR.

It is the settled policy of this court to avoid the determination of constitutional objections to an act of the legislature if the case presented on appeal may be disposed of upon any other sufficient grounds.

Error to Iron; O'Brien, J., presiding. Submitted January 21, 1915. (Docket No. 96.) Decided March 18, 1915.

George Hall reviews an order of the circuit court committing him to the State asylum as insane upon writ of error. Reversed.

*Grant Fellows*, Attorney General, and *August J. Waffen,* Prosecuting Attorney, for the people.

*Isaac W. Byers (L. A. Lyon,* of counsel), for respondent.

BROOKE, C. J.    Respondent was charged at the June, 1911, term of the circuit court of Iron county with having on the 18th day of April, 1911, killed and murdered one Zylowski.   On the 5th day of June, 1911, respondent was admitted to bail in the sum of $5,000, and from that time until the February, 1914, term of said court, a period of nearly three years, respondent was at large and working upon his father's farm in the township of Bates, in said county.   At that term of court the prosecuting attorney for Iron county presented his petition to the court, alleging upon information and belief that the respondent was at that time insane, and praying the court to determine the mental condition of the respondent.   This petition was accompanied by the affidavits of four citizens tending, in a greater or lesser degree, to establish the fact of the insanity of the respondent.   Upon the filing of said petition, the court made an order appointing a commission to examine respondent as to his sanity.   This commission consisted of three physicians and the prosecuting attorney of Iron county. The inquiry was prosecuted under section 19 of Act No. 238, Pub. Acts of 1905 (5 How. Stat. [2d Ed.] § 15408), which follows:

"When a person accused of the crime of murder, attempt at murder, rape, attempt at rape, incest, abduction, highway robbery or arson, or attempt to do great bodily harm, shall appear to be insane, or shall have escaped indictment upon the grounds of insanity or shall have been acquitted upon trial upon the grounds of insanity, the court, being certified by the jury or otherwise of the fact, shall carefully inquire and ascertain whether his insanity in any degree continues, and if it does, shall order such person into safe

custody and to be sent to the State asylum. If any person in confinement under indictment for the crime of arson, or murder, or attempt at murder, rape, or attempt at rape, or incest, or abduction, or highway robbery, or assault to do great bodily harm, shall appear to be insane, the judge of the circuit court of the county where he is confined shall institute a careful investigation. He shall call two or more reputable physicians and other credible witnesses, and the prosecuting attorney to aid in the examination, and if it be deemed necessary to call a jury for that purpose, is fully empowered to compel the attendance of witnesses and jurors. If it is satisfactorily proved that such person is insane, said judge may discharge such person from imprisonment and order his safe custody and removal to the State asylum, where such person shall remain until restored to his right mind, and then, if the said judge shall have so directed, the superintendent of said asylum shall inform the said judge and prosecuting attorney, so that the person so confined may within sixty days thereafter be remanded to prison and criminal proceedings be resumed, or he be otherwise discharged. If any such person be sent to said asylum, the county from which he is sent shall defray all expenses of such person while at the asylum for a period of two years, and the expense of returning home to such county if his discharge is effected during such period. If he shall not be discharged from the said asylum until after his transfer to the State shall have been effected, under the provisions of a subsequent section, the expenses of his return to said county shall be paid by the State of Michigan. The county or State may recover the amount so paid from the person's own estate, if he have any, or from any relative, town, city or county that would have been bound under existing laws to provide for and maintain him elsewhere."

The hearing on the said petition occurred on the 2d day of February, 1914. Upon the hearing respondent was represented by Mr. Isaac W. Byers and Mr. L. A. Lyon, who appeared as his attorneys. The prosecuting attorney inquired of counsel for respondent if a jury was demanded, whereupon Mr. Byers, one of respondent's counsel, responded:

"My position is that we must stand mute in the matter. If we are insane we cannot act in the matter.

"*The Court:* The attorneys in this case are sane.

"*Mr. Byers:* I suppose there should be a guardian appointed.

"*The Court:* The attorneys are the guardians of the accused at present.

"*Mr. Byers:* So far as we are personally concerned, we do not want a jury."

The investigation thereupon proceeded, and the people produced and swore some eight witnesses, who gave testimony touching the mental competency of the respondent. It may be said of this testimony that it is extremely weak. No witness sworn for the people gave evidence to the effect that in his opinion the respondent was insane. They were unable to go further than to say generally that the respondent, as a boy, was rather unlike other children, sometimes morose, easily aroused to passion, and inclined to exclude himself from the companionship of his fellows. The record fails to show that either of the three physicians were sworn as witnesses. They, however, in conjunction with the prosecuting attorney, prepared and filed a report on said 2d day of February. On the day following, February 3, 1914, the circuit judge entered the following order:

"Whereas on the 2d day of February, 1914, the prosecuting attorney of the county of Iron presented to the court his petition supported by affidavits now on file in this cause, setting forth in substance that said respondent appears to be insane.

"And whereas, it thereupon was ordered and directed that a commission composed of three reputable physicians and the prosecuting attorney be appointed to investigate and examine as to the sanity of the said respondent, George Hall, said commission being composed of Mr. A. J. Waffen, prosecuting attorney, and Dr. William McBurney, Dr. C. F. Larson, and Dr. E. M. Libby.

"Whereas said commission did carefully investigate

and examine as to the sanity of said George Hall and did report in substance as follows:

" 'We, the undersigned, William McBurney, C. F. Larson, and E. M. Libby, a commission of physicians duly appointed by the judge of the circuit court, together with the prosecuting attorney of Iron county, to carefully investigate and inquire into the sanity of one George Hall, now standing before the court charged by information duly filed with the crime of murder, and the said prosecuting attorney having filed with the court a motion and affidavit certifying to the insanity of the said George Hall, or to a probable belief of such insanity now existing, do hereby make the following report:

" '*First.* That we have carefully examined into the history of the said George Hall both by considering the testimony taken in open court and upon physical and mental examination of said respondent.

" '*Second.* That we find as the result of said investigation that said George Hall is now *non compos mentis* in this, to wit: That he belongs to that class known as imbeciles; that such imbecility, which is due to a retardation or lack of mental development, now continues.

" '*Third.* That at this time he has not sufficient self-control to resist violent impulses.

" 'Dated February 2, A. D. 1914.

" 'Respectfully submitted,

" 'AUGUST J. WAFFEN,

" 'Prosecuting Attorney,

" 'Iron County, Michigan.

" 'WM. MCBURNEY, M. D.

" 'C. F. LARSON, M. D.

" 'E. M. D. LIBBY, M. D.'

"Whereas said report is on file in this court and in this cause and has been duly entered on the journal of said court:

"Now, therefore, in pursuance of the statute in such case made and provided, it is ordered by the court now here that said respondent, George Hall, be placed in safe custody and removed and committed to the State asylum, being Ionia State Hospital at Ionia, Michigan, for the criminal insane, where said George Hall shall remain until he be restored to his right mind, and that, if he should be so restored to his right mind,

it is further ordered that the superintendent of the Ionia State Hospital shall inform the judge of the circuit court for the county of Iron and the prosecuting attorney of said county thereof, so that said George Hall may, within 60 days thereafter, be removed to the common jail of said Iron county and answer criminal proceedings now pending against him in said county of Iron, or the charge of murder be removed or he be otherwise discharged."

Whereupon respondent, by his counsel, interposed objections and filed the following exceptions:

"(1) That the said circuit judge erred in appointing the commissioners to examine said defendant, to investigate and report to the court as to his sanity, upon the petition of A. J. Waffen, prosecuting attorney of said county, and the affidavits accompanying said petition, all of which are filed in said cause and are a part of the record in said cause, for the reason that said petition and said affidavits presented in support of said petition do not show that said respondent was at the time insane, or that he appeared to be insane, or that he was at the time a criminal or dangerous insane person, or that he appeared to be insane, criminal, or dangerous.

"(2) The said circuit judge erred in acting upon said petition and affidavits, and in appointing said commissioners to examine and report to the court as to the sanity of said defendant, because said petition and said affidavits do not show that said defendant was at the time insane, or that he appeared to be insane, but that he was weak-minded and an imbecile.

"(3) That the said circuit judge erred in finding said defendant insane, upon the proceedings and evidence in said cause, and in committing said defendant to said Ionia State Hospital, upon the findings and report of said commission, and in not calling a jury to pass upon the question of the sanity of said defendant, as no reason appears in the record for not calling a jury to determine said question, and the defendant did not and has not waived his right to have said question determined by a jury.

"(4) That the said circuit judge erred in making an order committing said defendant to said Ionia State Hospital upon the testimony and proceedings

had in said cause, for the reason that said testimony produced and proceedings had herein did not afford said defendant such due process of law he was entitled to under the Constitution and laws of this State and of the United States; that said proceedings and evidence show that said defendant is only weak-minded, and he is prevented by said proceedings and order of commitment from making any defense he may have to the charge made against him in this cause; that said order of commitment brands him as a criminal, without his day in court.

"(5) That the said circuit judge erred in making said order of commitment upon the report of the physicians appointed as commissioners to examine said defendant and report to the court, for the reason that said report does not show said defendant to be insane, dangerous or criminal, or dangerously or criminally insane.

"(6) That the said circuit judge erred in making said order committing said defendant to the Ionia State Hospital for the reason that there is no evidence or testimony in this cause showing that this defendant, at the time of said examination and commitment, was insane, that he appeared to be insane, or that he was at the time dangerous, criminal, or a dangerous and criminal insane person, or that he appeared so to be.

"(7) That the said circuit judge erred in making said order of commitment, for the reason that the record in said cause shows that the said defendant had not escaped indictment or been acquitted upon trial upon the grounds of insanity, or that he was in confinement under indictment, at the time of said investigation and report, upon which said order of commitment to the State Hospital at Ionia is based.

"(8) That said circuit judge erred in making said order of commitment, for the reason that the statute governing the commitment of persons to said Ionia State Hospital does not provide that imbeciles and weak-minded persons shall be committed to said institution pursuant to said statute, and that the law is uncertain and indefinite as to the disposition of the persons of those charged with the crime with which this defendant is charged in this cause."

Touching the first and second exceptions, an exam-

ination of the petition discloses that the prosecuting attorney represented to the court:

"That he is informed and believes and has reason to believe that the said George Hall has been demented since childhood, and that on said 18th day of April, A. D. 1911, he was seriously demented,. if not insane, and that your petitioner believes that he has not fully recovered from his mental illness and is still demented, if not insane."

The affidavits accompanying the petition likewise set up the fact that the various affiants believed that said Hall since early childhood was demented, if not at times insane, and therefore that they doubted his sanity. The statute above quoted provides:

"When a person accused of the crime of murder, * * * shall appear to be insane, or shall have escaped indictment upon the grounds of insanity or shall have been acquitted upon trial upon the grounds of insanity, the court, being certified by the jury or otherwise of the fact, shall carefully inquire and ascertain whether his insanity in any degree continues, and if it does, shall order such person into safe custody and to be sent to the State asylum."

Under the language of this part of the section, we have no doubt that the petition of the prosecutor was sufficient to clothe the court with authority to make the investigation contemplated by the statute.

The third exception presents a question of more gravity. As above pointed out, the physicians called by the court to aid in the investigation do not appear by the record to have been sworn. The language of the statute is that the court "shall call two or more reputable physicians and other credible witnesses, and the prosecuting attorney, to aid in the examination." Nowhere in the statute does it appear that a report or certificate of the physicians must be filed. It seems to us clear that it was the intent of the statute to compel the physicians called by the court to be sworn, and that their examination should be made a part of the

record in the case upon which the court should or might base a conclusion as to the fact of the sanity or insanity of the respondent. It would seem clear from the recitation of the so-called report by the court in his order that said order was based in part, at least, upon the statements contained in the report. So far as the record discloses, these statements were made by the physicians signing the report under no sanction. While not controlling, provisions contained in two other acts are suggestive upon this point. Section 14 of Act No. 101, Pub. Acts of 1909 (2 How. Stat. [2d Ed.] § 3781), provides as follows:

" * * * Certificates that a person is feeble-minded or epileptic must contain the facts and circumstances upon which the opinion of the physicians is based, and show that the condition of the person examined is such as to require care and treatment in an institution for the care, custody and treatment of feeble-minded or epileptic persons. * * * *"

Section 15 of Act No. 25, Pub. Acts of 1911, amending Act No. 217, Pub. Acts of 1903, provides:

"Certificates of insanity must be made by two reputable physicians, under oath, appointed by the probate court of the county where such alleged insane person resides, or is an inhabitant, to conduct the examination. * * * *"

While that portion of section 19 referring to this subject quoted above does not in terms require the physicians to be sworn, we are of opinion that such must have been the intention of the legislature. The court is empowered to call two or more reputable physicians and other credible witnesses. This, in our opinion, indicates that the legislature intended that the physicians as well as the other credible witnesses should be sworn.

Objection is made on the part of the respondent that the certificate itself is insufficient in that nowhere do the physicians who signed it certify that the re-

spondent, at the time of the making thereof, was insane. They do say, however, that the respondent is now *non compos mentis,* and point out in what such mental derangement consists. We think, if otherwise unobjectionable, the certificate in this regard would be adequate. It was said by Mr. Justice CAMPBELL in the case of *Van Deusen* v. *Newcomer,* 40 Mich. 90, at page 141:

"The law has but one test of insanity, and that is whether a person is *compos mentis,* or capable of exercising rational self-control."

Nor are we prepared to say that the failure of the court to summon a jury to determine the question is fatal to the proceedings. The section apparently contemplates that the inquiry may be made by the court, although he is therein empowered, if he deems it necessary, to call a jury. In the instant case inquiry was made of respondent's counsel whether a jury was desired or not, and counsel said so far as they were personally concerned a jury would not be required. We are quite well aware that neither counsel for respondent, nor respondent himself, could waive any constitutional right, but we are not prepared to say that the failure to call a jury to pass upon the mental condition of the respondent is such a denial, particularly when competent counsel representing respondent at the time of the inquiry declined to make a demand for a jury.

The fourth, fifth, and sixth assignments of error have been already sufficiently covered.

The argument that neither the evidence nor the report shows the respondent to be insane, dangerous, or criminal is, in our opinion, without force. By the terms of the statute the inquiry is had for the purpose of ascertaining "whether his insanity in any degree continues." It seems to us clear that such insanity might continue in some degree and in such a

185 Mich.—5.

degree as to warrant the restraint of the respondent for the time being and until secured, even though he was not violent or apparently dangerous. The report itself, however, if it constitutes competent evidence upon which to base the order, recites "that at this time he has not sufficient self-control to resist violent impulses." If this statement were properly in evidence, we are of opinion it would be adequate, under the statute, to warrant the action of the court.

The seventh assignment is predicated upon the fact that, at the time the investigation was had, the respondent had neither escaped indictment, nor had been acquitted upon trial upon the grounds of insanity, nor that he was in confinement under indictment. As before noted, the respondent had been enlarged on bail some three years before the investigation was had. We think, however, that counsel for respondent overlook the fact that the investigation may be had in another class of cases—the very first mentioned in section 19, which recites that:

"When a person accused of the crime of murder * * * shall appear to be insane * * * the court, being certified by the jury or otherwise of the fact, shall carefully inquire," etc.

There can be no doubt that, at the time the investigation was made, the respondent stood accused of the crime of murder, and as such was within the first class described by the statute, although he had neither escaped indictment, nor been acquitted upon the grounds of insanity, nor was he in actual confinement under indictment.

It is contended that the order itself is insufficient; that nowhere therein does the court determine that the respondent was, at the time the order was made, insane. It will be noted that, after reciting the report of the commissioners, the court proceeds:

"Whereas said report is on file in this court and in

this cause and has been duly entered on the journal of said court," etc.

Nowhere in the order does the court declare that the evidence adduced before him at the investigation convinced him of the fact of respondent's insanity, nor is it certified that it was "satisfactorily proved that such person is insane." We are of opinion that it was unnecessary for the order to contain a recitation of the report, but that it was necessary that the order should contain a judicial determination of the basic requisite fact; *i. e.,* the respondent's insanity. *North* v. *Joslin,* 59 Mich. 624 (26 N. W. 810) ; *In re Storick,* 64 Mich. 685 (31 N. W. 582) ; and *Partello* v. *Holton,* 79 Mich. 372 (44 N. W. 619).

The last assignment of error raises the question of the constitutionality of the law itself. Unconstitutionality is predicated upon the fact that the statute leaves to the circuit judge the discretion as to whether or not the superintendent of the asylum shall inform the judge and prosecuting attorney that the person committed is restored to his right mind. It is said: That, if the judge does not give this direction to the superintendent of the asylum, the person committed is subject to life imprisonment in the asylum. That if such direction is given, and the person has been restored to his right mind, and the superintendent neglects or refuses to inform the judge and prosecuting attorney of the fact, there is no provision in the statute to compel the superintendent to act, and there is no provision providing for a hearing before any officer, court, or other tribunal, to determine the question whether or not the person committed has been restored to his right mind. In support of respondent's position, the following cases are cited: *People* v. *Smith,* 9 Mich. 193; *People* v. *Lawton,* 30 Mich. 386; and *Underwood* v. *People,* 32 Mich. 1 (20 Am. Rep. 633).

While the constitutionality of this statute may be seriously questioned, we must at this time decline to pass upon that phase of the case, for the reason that it is a settled policy of this court to avoid determination upon that ground, if the case presented can be disposed of upon any other ground.

For the errors pointed out, the judgment is reversed, and the respondent remanded to the custody of the sheriff of Iron county, there to abide such further proceedings as may be had according to law.

McALVAY, J., concurred with BROOKE, C. J. KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred in the result.