*In re* GEDMINAS.

Habeas Corpus—Equally Divided Court.

> Writ of *habeas corpus* to obtain release from an institution, to which plaintiff had been committed as a feeble-minded person, because of alleged defects in commitment is dismissed by an equally divided court.

*Habeas corpus* proceedings by Josephine Gedminas with accompanying certiorari to Edward Command, Wayne County Judge of Probate, to obtain release from Michigan Home and Training School at Lapeer. Submitted June 8, 1937. (Calendar No. 39,395.) Writs dismissed by an equally divided court November 10, 1937. Rehearing denied December 15, 1937.

*John C. Dalton,* for petitioner.

*Sempliner, Dewey, Stanton & Honigman,* for Judge of Probate.

Butzel, J. John C. Dalton, as attorney for Josephine Gedminas and Nellie Grieza, her maternal aunt, petitioned this court for writ of *habeas corpus* and accompanying writ of certiorari, claiming that Josephine was restrained of her liberty as a feeble-minded person by the medical superintendent of the Michigan Home and Training School in said institution at Lapeer, Michigan; that Josephine was neither committed nor detained by virtue of any process, judgment, decree or execution specified in 3 Comp. Laws 1929, § 15207; that the only person appearing at the purported inquest was one Eliza-

beth Frase, a social worker, who, petitioner alleges, was not qualified to testify relative to the alleged feeble-mindedness of said Josephine Gedminas, and who answered in the affirmative when questioned by the court as to whether Josephine was feeble-minded; that this appears from a transcript of the testimony taken at the proceedings, copy of which was attached to the petition and incorporated therein by reference. Petitioner also claimed that the application, upon which the proceedings were based, made by the father of Josephine, does not contain sufficient allegations of facts showing feeble-mindedness so as to give the court jurisdiction.

In his return to the writ of *habeas corpus,* the medical superintendent of the Michigan Home and Training School at Lapeer shows that Josephine was being lawfully detained as an inmate of the institution as a feeble-minded person in pursuance to the order of Hon. Edward Command, judge of probate of Wayne county, Michigan. The superintendent further states that he declined to discharge the inmate under the provisions of 2 Comp. Laws 1929, § 6902, because of his belief that her discharge would be detrimental to the public welfare and injurious to her as a patient. A copy of the order of commitment is attached to his return. The order is regular in form.

The return of the probate judge to the writ of certiorari shows that on September 3, 1931, Charles Gedminas, father of Josephine, petitioned for the admission of his daughter to the Michigan Home and Training School; that the statement of facts upon which the allegations of feeble-mindedness were based, is as follows: that the court fixed September 16, 1931, for the hearing on the petition and appointed two legally qualified physicians to exam-

ine Josephine, and the party with whom Josephine was staying, the father and the prosecuting attorney were served with citations; that on the day set for the hearing, one of the doctors certified under oath that Josephine was 17 years and 5 months of age, that she attended school several years but failed to benefit from the ordinary instruction; that "she lacks the potentiality to maintain existence independently of supervision or external support and she cannot adapt her mode of life to any environment * * * she has never been capable of work that would contribute appreciably towards her support. She requires institutional supervision and care for her own protection."

The other doctor certified under oath that Josephine was unable to do simple sums in arithmetic, that she was "unable to give name of street upon which she lives, has never progressed beyond the fourth grade. Given to 'spells' of crying for no apparent reason. Unable to leave neighborhood without becoming lost. * * * I recommend her commitment to a suitable institution for the care and treatment of the feeble-minded."

The judge further certified that on the day set, he held an inquest in open court to consider the proofs, that he considered the certificates of the physicians appointed to examine Josephine and their recommendations and upon the consent of the father and, in the absence of any showing to the contrary, did find Josephine to be a feeble-minded person, and ordered her commitment, and that she was admitted to the Michigan Home and Training School. Attached to the return are photostatic copies of a previous application made in 1924 for Josephine's admission to the Michigan Home and Training School and physician's certificate showing

that she was an institutional case, an inquiry blank dated September 3, 1931, showing that the bureau of Catholic welfare, Wayne county clinic for child study, juvenile court and the police department, juvenile division, were interested in Josephine prior to the filing of the present application. The return further indicates that there were subsequent sterilization proceedings in the probate court for the county of Lapeer and the payment of fees to doctors, but this cannot be relied upon to justify the order of the judge. The exhibit attached to the petition for writ of certiorari purports to be the testimony taken in the probate court at the inquest. It shows that a social worker from the bureau of Catholic welfare, upon being asked whether Josephine was feeble-minded, replied in the affirmative. The social worker also testified that Josephine had been previously committed in 1924 but went to live with relatives in Jackson. It further shows that the father was also present in court and stated that it was for the best interests of Josephine that she be sent to Lapeer. No objections were made to the questions asked the social worker or to her qualifications as an expert. From the questions asked, it is obvious that Josephine was present in court where the judge had an opportunity to see her. He also had before him the sworn certificates of the doctors. While it was the duty of the probate judge to make a proper record, we find that there is some evidence to justify the order of admission. A less hurried and more complete record would have avoided the present proceeding. The question is raised in the brief of the judge of probate whether on certiorari the court will examine into the sufficiency of the evidence if there is any testimony at all at an in-

quest at which proofs were taken. In *People* v. *Harris*, 266 Mich. 317, the court stated as follows:

"The return on certiorari shows that the court made an investigation and the recital in the record of sentence demonstrates that it was in compliance with the statutes. The court, therefore, judicially determined that the investigation it made was in conformity with law. If it was in error in that respect, the remedy was by appeal, as on writ of error."

A further question is raised as to whether the petition of September 3, 1931, contains sufficient facts so as to give the court jurisdiction even if petitioner be correct in his claim that the statement therein that Josephine is a sex problem only states a conclusion without alleging sufficient facts upon which such conclusion is based. The allegation that the patient was examined at the child clinic of Wayne county and had a mental age of 7 years and 4 months, an I. Q. of 49, definitely shows feeble-mindedness. While the language may not be of every day parlance, it nevertheless has a scientific meaning denoting feeble-mindedness. The I. Q. is determined by psychometrists, who frequently are social workers proficient in measuring mental processes, if there are any, and thus determining feeble-mindedness if it exists. It is not necessary to set forth the evidence in a petition of this character, nor are the allegations open to the objection that they are hearsay. Frequently petitions are made by officers and others authorized by the statute and they rely upon information from others. In the petition made by the father, the natural guardian of the girl of 17 and one of the persons designated by statute to make the petition under 2 Comp. Laws 1929, § 6888, he states that she has a mental age of

7 years and 4 months, an I. Q. of 49, and he gives the source of his information, the allegation is sufficient to show feeble-mindedness and to confer jurisdiction.

The writs will be denied.

FEAD, C. J., and NORTH and BUSHNELL, JJ., concurred with BUTZEL, J.

SHARPE, J.   September 3, 1931, Charles Gedminas filed an application in the probate court of Wayne county for the admission of Josephine Gedminas to the Michigan Home and Training School at Lapeer. The petitioner alleged that he is the father of Josephine Gedminas and that the "patient was examined at the child study clinic in August, 1931. Mental age 7 years 4 months. I. Q. 49. Sex problem." Following the filing of this petition an order was entered appointing T. C. Starrs and E. J. Quirk physicians to examine said Josephine Gedminas. On the return day fixed for the hearing, Dr. Starrs filed a certificate stating that he had examined Josephine Gedminas and found that she was feeble-minded and required treatment in an institution. Dr. Quirk, the other physician, filed a like certificate. An order of commitment of Josephine Gedminas was entered September 16, 1931, by the judge of probate.

January 13, 1937, a petition for writ of *habeas corpus* was filed in which petitioner alleges that the facts set forth in the application of Charles Gedminas, upon which the proceedings were based, are not sufficient for the allegation of feeble-mindedness as is required under 2 Comp. Laws 1929, § 6888; and that the probate judge did not institute an inquest and take proofs of the alleged feeble-mindedness of Josephine Gedminas before entering an

order of commitment as required by the above statute. The respondent contends that review of a commitment as an insane or feeble-minded person must be by appeal or writ of error and not by *habeas corpus*.

In *People* v. *Harris,* 266 Mich. 317, we said:

"*Habeas corpus* is not a substitute for writ of error to inquire into the regularity of the trial and conviction. On *habeas corpus* the question is solely one of jurisdiction of the court to enter the judgment of conviction and sentence. *In re Gardner,* 260 Mich. 122; *In re Lamanna,* 263 Mich. 62. Without accompanying writ of certiorari, the question would be determined from the face of the records. The accompanying writ of certiorari is merely ancillary, not to be a substitute for writ of error nor to change the scope of review on *habeas corpus* but to supply material for determination of jurisdiction. *In re Gardner, supra; In re Moynahan,* 255 Mich. 497. * * *

"But where the court has jurisdiction, an error in the proceedings cannot be passed upon by *habeas corpus* even though it would require reversal on appeal. *In re Ellis,* 79 Mich. 322; *In re Krusiewicz,* 263 Mich. 74."

In *Palmer* v. *Kalamazoo Circuit Judge,* 83 Mich. 528, the court said:

"The writ of *habeas corpus* penetrates the walls of insane asylums as fully and freely as any other place where persons are illegally restrained of their liberty, and that the orders and decrees of probate courts possess no immunity different from those of other courts when they proceed without jurisdiction."

In *Re Greenman,* 212 Mich. 687, the court said: "The probate court derives its jurisdiction from the statute. To obtain jurisdiction in this case (com-

mitment to home for epileptics), therefore, the provisions of the statute should have been strictly pursued. See *North* v. *Joslin,* 59 Mich. 624; *Grady* v. *Hughes,* 64 Mich. 540; *In re Phillips,* 158 Mich. 155; *In re Miller's Estate,* 173 Mich. 467; *In re Allen,* 82 Vt. 365 (73 Atl. 1078, 26 L. R. A. [N. S.] 232); 15 C. J. p. 892.'' And held that service of notice on the child was insufficient as to time. This was shown in the return of the probate judge.

In *Re O'Neil,* 239 Mich. 450, we held that where the petition for an order directing the admission of an alleged insane person to a hospital contained a conclusion rather than facts, the probate court did not obtain jurisdiction and all subsequent proceedings were void because of it.

Section 6888, 2 Comp. Laws 1929, provides that: ''Such petition * * * contain a statement of the facts upon which the allegation of such mental disease is based and because of which the application for the order is made.''

An examination of the petition filed in the case at bar reveals that it does not contain a statement of facts upon which the allegation of feeble-mindedness is based. The petition states, ''patient was examined at the child study clinic in August, 1931. Mental age 7 years 4 months. I. Q. 49. Sex problem.'' While the petition states that Josephine Gedminas was examined, it does not state the purpose nor the nature of the examination. Moreover, the statements concerning Josephine's mental age and that she is a sex problem are clearly conclusions which are not based upon any facts in the application. In the *O'Neil Case, supra,* we said:

''The purpose of the statute is manifest. Facts must be stated. Such is the statutory mandate.

Facts were not stated. This was jurisdictional. The court could not assume jurisdiction on the petition filed.''

See, also, *In re Guardianship of Storick,* 64 Mich. 685; *Ex parte Drye,* 250 Mich. 210.

In our opinion the petition in this cause is insufficient because of the absence of facts and gave the probate court no jurisdiction to hold an inquest and commit the person. All subsequent proceedings were a nullity and Josephine Gedminas may not be detained by virtue of them. The lack of jurisdiction in such cases may be inquired into in *habeas corpus* proceedings.

Petitioner should recover costs.

WIEST, POTTER, and CHANDLER, JJ., concurred with SHARPE, J.