Syllabus.

## MARY T. SNYDER

*v.*

## EDWARD M. SNYDER *et al.*

*Filed at Ottawa May 12, 1892.*

1. INSANE PERSON—CONSERVATOR—*when appointed—test of sanity of respondent.* On an application, under the statute, for the appointment of a conservator for an insane or distracted person, the true and proper test is whether the defendant has sufficient mental capacity to transact ordinary business, and to take care of and manage his property. If he is incapable of understanding and acting with discretion in the ordinary affairs of life, then he is a person of unsound·mind, and incapable of managing his estate.

2. On the trial of a proceeding to adjudge a party insane or incapable of taking care of and managing his property, the execution of a deed conveying the respondent's property to a trustee, after the institution of the proceeding, can have no special bearing on the merits of the case.

3. PROBATE COURTS—*jurisdiction.* Under section 5 of the act of 1877, for the establishing of probate courts, the jurisdiction of all probate matters, and all matters in relation to the appointment of guardians and conservators, and the settlement of their estates, is transferred from the county court to the probate court in all counties where the latter court is established.

4. APPEAL FROM PROBATE COURT—*to circuit court—trial de novo—appointment of conservator.* A trial of an appeal from the order of the probate court adjudging a person insane is given to the circuit court, and on such appeal the trial is to be *de novo*, and the latter court may appoint a conservator of the respondent, the same as the probate court might have done. On a trial *de novo* the circuit court stands in the shoes of the probate court, and is clothed with the same powers and jurisdiction as that court.

5. PRACTICE IN THE SUPREME COURT—*confession of error.* The concession of an appellee, in his argument in the Appellate Court, as to the power of the circuit court on the trial of an appeal from an order of the probate court adjudging a person to be distracted or insane, can not be regarded as a confession of an error assigned in regard to such matter. The appellee can confess an error assigned only by appearing in open court in person or by counsel. An order to that effect would be entered of record showing the confession.

6. PRACTICE—*party can not complain of instructions given according to theory contended for on trial.* Where a party himself has the court to give instructions based upon a certain theory of the law, he can not be heard to complain of instructions given on the other side for the reason they are given upon the same theory.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of La-Salle county; the Hon. DORRANCE DIBELL, Judge, presiding.

Edward M. Snyder, a son, and Mary L. Wedgate and Mrs. T. A. McGinnis, married daughters, of Mrs. Mary T. Snyder, filed their petition in the probate court of LaSalle county on the 10th day of May, 1889, in which they alleged that Mary T. Snyder was a distracted person and a person of feeble mind, and that she owned real and personal estate consisting chiefly of a homestead, dower and widow's award, and a distributive share in the personal estate of Levi Snyder, her deceased husband. The whole estate was estimated to be worth about $8000 or $9000, and it was alleged that she, the said Mary T. Snyder, was unfit to properly manage or control her property, and praying for some other fit person to be conservator of said Mary T. Snyder. The inquiry in the probate court resulted in a verdict of the jury sustaining the allegations of the petition, which verdict was ordered by the court to be entered of record and judgment entered thereon, and from which verdict an appeal was taken by Mary T. Snyder to the circuit court of LaSalle county, and allowed, without the probate court having first appointed a conservator. At the January term, 1891, of the circuit court, a trial of said cause was had, which resulted in a verdict finding that Mary T. Snyder was a "distracted person" and a person of "feeble mind," and that by reason thereof she was not capable of caring for her estate. A motion for a new trial was made and overruled, and judgment was thereupon entered on the verdict, adjudging that Mary T. Snyder was a distracted person and

that a conservator be appointed for her, and one Samuel M. Heslet was then and there appointed conservator of the person and estate of Mary T. Snyder, and required to file a bond in the penal sum of $16,000, with security to be approved by the probate court, and the cause was thereupon remanded to the probate court for further proceedings, etc. From the judgment of the circuit court Mary T. Snyder appealed to the Appellate Court, where the judgment was reversed as to the appointment of a conservator and in all other respects it was affirmed, and the cause was remanded, with directions to remand to the probate court for the appointment of a conservator and further proceedings.

Messrs. McDOUGALL & CHAPMAN, Mr. D. B. SNOW, and Messrs. BREWER & STRAWN, for the appellant:

As to the jurisdiction of the circuit court to appoint a conservator for an insane person, see Const. of 1870, sec. 12, art. 6; *Klokke* v. *Dodge,* 103 Ill. 128; *Freeland* v. *Dazey,* 25 id. 294; *Labadie* v. *Hewitt,* 85 id. 342; 2 Story's Eq. Jur. sec. 1365; *Burns* v. *Henderson,* 20 Ill. 264; *Myers* v. *People,* 67 id. 503; *Darling* v. *McDonald,* 101 id. 373; *Hankins* v. *People,* 106 id. 628; *Young* v. *People,* 6 Bradw. 434; *Mapes* v. *People,* 69 Ill. 523; *Wilson* v. *People,* 94 id. 426; *Beaubien* v. *Brinckerhoff,* 2 Scam. 269; *Kenney* v. *Grier,* 13 Ill. 432; *Jennings* v. *McConnel,* 17 id. 150; *Grattan* v. *Grattan,* 18 id. 171; *Townsend* v. *Radcliffe,* 44 id. 448.

Messrs. SNYDER & STEAD, and Messrs. MAYO & WIDMER, for the appellees:

As to the jurisdiction of the circuit court, see *Harding* v. *Shepard,* 107 Ill. 264; *Crain* v. *Kennedy,* 85 id. 340; *Heustis* v. *Johnson,* 84 id. 61; *Hales* v. *Holland,* 92 id. 498.

An appellant can not be allowed to ask the court, on the trial, to instruct the jury upon one theory of the law, when he fails, on the trial, to appeal to this court, and assign for

error the giving of similar instructions on the part of the appellee. *Rockford* v. *Falver,* 27 Ill. App. 607; *Wear* v. *Duke,* 23 id. 322; *Chapman* v. *Barnes,* 29 id. 184; *Chicago F. & B. Co.* v. *Major,* 30 id. 276; *C. I. & W. Co.* v. *Badger,* id. 314; *Miller* v. *Goble,* id. 578; *Barker* v. *Livingston Co. Nat. Bank,* id. 591; *Williard* v. *Swanson,* 22 id. 424; *McMahon* v. *Sankey,* 35 id. 341; *Iron and Steel Co.* v. *Martin,* 115 Ill. 366; *Railroad Co.* v. *Latimer,* 128 id. 163.

Mr. Justice Craig delivered the opinion of the Court:

This appeal is brought by Mary T. Snyder to reverse the judgment of the Appellate Court, and the principal part of the argument of appellant's counsel is devoted to a discussion of the question whether the circuit court has original or concurrent jurisdiction with the probate court to appoint a conservator for a distracted person. Whether the circuit court has original jurisdiction to entertain a petition or bill in chancery for the appointment of a conservator for a distracted person, is a question not presented by this record, and consequently one we are not called upon to decide.

Section 5 of the act of 1877, (Laws of 1877, p. 80,) "An act to establish probate courts in certain counties," provides "that probate courts shall have original jurisdiction in all matters of probate, the settlement of estates of deceased persons, the appointment of guardians and conservators, and settlement of their accounts." The section further provides, "that as soon as the court is organized in any county, the county court of such county shall turn over to the probate court all of its probate records, and all books and papers relating to probate matters in such county, and all records, files and papers in matters of guardianship and conservators." Under this section of the act it is manifest that in all counties where a probate court should be established the jurisdiction of all probate matters, and all matters in relation to appoint-

ment of guardians and conservators and the settlement of their estates, was transferred from the county to the probate court.

Section 11 of the act provides: "Appeals may be taken from the final orders, judgments and decrees of the probate court to the circuit court in all matters except in proceedings on the application for the sale of real estate,   *   *   *   and upon such appeal the case shall be tried *de novo.*"

Section 1, chapter 86, of the Revised Statutes of 1874, provides: "Whenever any idiot, lunatic or distracted person has any estate, real or personal,   *   *   *   the county court in the county in which such person lives shall, on application of any relative or creditor, etc., order a jury to be summoned to ascertain whether such person be an idiot, lunatic or distracted;   *   *   *   and if the jury return in their verdict that such person is an idiot, lunatic or distracted,   *   *   *   it shall be the duty of the court to appoint some fit person to be the conservator of such person."

Here, a proper petition was presented to the probate court of LaSalle county, which had acquired the jurisdiction of the county court in relation to the appointment of conservators. A trial was had, and the jury returned a verdict that Mary T. Snyder was a distracted person. The court entered judgment on the verdict, but for some reason which does not appear failed to appoint a conservator, as it was the duty of the court to do upon the return of the verdict. An appeal was taken by Mary T. Snyder to the circuit court.

Section 12, article 6, of the constitution, provides: "Circuit courts shall have original jurisdiction of all cases in law and equity, and such appellate jurisdiction as is or may be provided by law." Without stopping to consider what original jurisdiction the circuit court might possess under the broad language of the constitution, here it is manifest that the circuit court had appellate jurisdiction of the proceeding, as the statute expressly requires the case to go to the circuit court by appeal, and it is also apparent that the circuit court exer-

cised that appellate jurisdiction on the trial of the proceeding and in the appointment of the conservator. It only remains to be determined what power the circuit court possessed on the trial of the appeal.

As said before, the statute required the appeal to be taken to the circuit court, and also required the cause, on appeal, to be tried *de novo.* On a trial *de novo* the circuit court stood in the shoes of the probate court. It had the same jurisdiction on the trial *de novo,* and was clothed with the same powers as the probate court. The same rule is observed in a case of this kind as occurs where an appeal is taken from a justice of the peace to the circuit court. On a trial of an appeal of that character the circuit court exercises the same jurisdiction which was conferred by law on the justice, and on the trial of the appeal is clothed with the same powers. As has been seen, upon a return of the verdict that the person is distracted, the statute required the probate court to appoint a conservator. On a trial of the appeal in the circuit court, as the trial was required to be *de novo,* upon the return of the verdict that Mary T. Snyder was distracted it was the duty of the circuit court to appoint a conservator, which it did.

It is said, however, that the supposed error of the circuit court in the appointment of a conservator was confessed in the Appellate Court, and hence the decision of that question is not now before the court. This is a misapprehension of the record. The record fails to show that any error was confessed. Something was said in appellees' argument to the effect that it was conceded that the circuit court was not authorized to make the appointment, but that can not be regarded as a confession of error. If the appellees desired to confess any error assigned, they could only do so by appearing in open court, in person or by counsel, and there confess any error which they desired. Then an order to that effect would be entered of record, and a judgment would be entered on the confession of errors. Nothing of that kind was done.

5—142 Ill.

It is also claimed that the court erred in its rulings in the admission of evidence and in the instructions to the jury. Much evidence was introduced on the trial, by both parties, in reference to the mental condition of the appellant, and while it may be true that the ruling of the court on questions of evidence may not have been technically accurate in every instance, yet we find no such departure from the established rules of evidence as would authorize a reversal of the judgment. As to the instructions, the court gave eleven on behalf of petitioners and thirteen on behalf of the respondent, and it is apparent that the jury were fully instructed upon every legal question involved in the record.

The main question, however, raised by counsel for the defendant on the instructions given for petitioners, and in reference to the admissibility of petitioners' evidence, is whether a person is to be regarded distracted, within the meaning of chapter 86 of our statute, who is not possessed of "sufficient mental capacity to care for and manage his estate," or, in different language, who may be so far deranged as to be incapacitated from transacting ordinary business. Upon looking into the record it will be found that the case was tried before the jury, by both sides, on the theory that the real question involved was, whether the defendant had sufficient mental capacity to transact ordinary business. If she had, then she was not to be regarded as distracted. On the other hand, if she had not such capacity then she was to be regarded as a distracted person.

Counsel for the defendant, on the examination of her witnesses, gave in evidence their opinions in regard to her mental capacity to transact ordinary business, and in the instruction given on the request of the defendant that issue was submitted to the jury. It will only be necessary to refer to one of the instructions—No. 15—on that question. It is as follows:

"The court further instructs the jury, that before they can find the respondent, Mary T. Snyder, is a distracted person,

they must believe, from the evidence, that she is so far incapable of acting rationally in the ordinary affairs of life, and of comprehending the nature and value of property, as to be incapable of transacting or procuring to be transacted ordinary business. And if, upon the question as to whether or not respondent is capable of transacting ordinary business or procuring it to be transacted, the jury believe the evidence to be equally balanced, or that the evidence preponderates in favor of the respondent, the jury must find in favor of the respondent, and that she is not a distracted person."

Several other instructions given for the defendant announced the same principle in a different form. In view of the instructions given for the defendant at her request, if the theory upon which the court proceeded was not the correct one, it having been adopted at the request of the defendant, she can not now complain of the action of the court. *Calumet Iron and Steel Co.* v. *Martin,* 115 Ill. 366; *Illinois Central Railroad Co.* v. *Latimer,* 128 id. 163.

But, independent of this question, we are inclined to hold that the court took the correct view of the law in the admission of evidence and in the instructions to the jury. There are numerous legal proceedings where insanity or mental incapacity may be shown, and the rule for establishing the degree of insanity must of necessity vary, depending, as it must, upon the object or purpose for which the insanity is to be proved. In one case the purpose may be to prove insanity as a defense to a criminal charge. In another case the purpose may be to defeat the execution of a will. In another case the question may be whether the person shall be deprived of his liberty and confined in an asylum, and still in another case the question may be whether a conservator shall be appointed to take charge of the estate of the insane person. What might be regarded insanity or mental incapacity in the one case would not necessarily be insanity in another. No definite rule can be laid down which will apply to all cases alike.

Without undertaking to determine here what proof would be necessary to establish insanity or unsoundness of mind in the different cases named, it is manifest, on an application. like the one in question, the true question is whether the person has sufficient mental capacity to transact ordinary business,—to take care of and manage his or her own property. Our statute on the subject seems to indicate that such is the proper test. Section 37, of chapter 86, provides: "Where a person for whom a conservator has been appointed shall be restored to his reason, such person may apply to the county court to have the conservator removed and the care and management of his property restored to him." Section 39 declares it shall be the duty of the court to which such application is made, to cause a jury to be summoned "to try the question whether said applicant is a fit person to have the care, custody and control of his or her property, and if the jury return in their verdict that such person is a fit person to have the control of such property, as aforesaid," then the court shall enter an order restoring such person to his former rights and privileges.

Under this last section the legislature has expressly declared that ability to manage and control property is the test whether the person has been restored to reason. The inquiry under the first section of the act is to ascertain whether the mind of the person is so far impaired that a conservator should be appointed, while under section 39. the inquiry is whether the conservator should be continued. Why should one test of mental capacity be required in the one case and a different test be applied in the other case? If, as the legislature has declared, on the trial of the question whether the conservator should be continued the true test to determine the mental condition is whether such person is a fit person to have charge of his affairs, and thus capable of transacting ordinary business, no reason is perceived why the same rule should not be

applied where a petition has been filed under section 1 of the statute.

In other States, where similar statutes have been involved, the courts have adopted the rule we are inclined to adopt. In *Commonwealth* v. *Schneider*, 59 Pa. St. 328, the court said: "The protection of property is one, if not the main, object of the statute. It is practical that the test of liability to a commission should depend greatly on that unsoundness of mind which discloses incompetency to its management and the care and protection of it in a rational manner. * * * It is not to be doubted that a finding that the party, from unsoundness of mind, is incapable of managing his affairs, is liable to a commission, although not totally incapable of taking care of himself."

In *Matter of Baker*, 2 Johns. Ch. 232, Chancellor Kent, in delivering the opinion of the court, said: "The question, as Lord Erskine observed, was whether the party had become mentally incapable of managing his affairs. I am satisfied that these later decisions are not only founded on good sense and the necessity of the case, but are a sound exposition of the common law, which gave to the king, as *parens patriæ*, the care and custody of all persons who had lost their intellects and become *non compos,* or incompetent to take care of themselves. * * * I shall therefore award a commission, in the nature of a writ of lunacy, to inquire whether James Baker be of unsound mind or mentally incapable of managing his affairs, and I shall direct that he be present, for it is his privilege, so that the jury may have inspection of him."

In Indiana, under a statute quite similar to ours, in *Fiscus* v. *Turner*, 125 Ind. 46, where the jury had been instructed that if they believed, "from the evidence, that in Nancy Fiscus there is an essential privation of her reasoning faculties, or if she is incapable of understanding and acting with discretion in the ordinary affairs of life, then she is a person of unsound mind, and incapable of managing her estate, and you should

so find." This instruction having been challenged, in passing upon it the court said: "We think counsel is mistaken in his contention that the instruction does not fix any standard by which the jury is to be governed. The jury were told, in substance, that if Nancy Fiscus, the appellant, was so far deprived of reason that she was no longer capable of understanding and acting with discretion in the ordinary affairs of life, she was insane, within the meaning of the law. This, we think, was a correct definition of insanity, and one that was easily understood by the jury." See, also, *McCarman* v. *Cunningham*, 108 Ind. 545.

Some of the instructions given may be liable to criticism, but in view of all the instructions given we do not think the jury was misled by the instructions.

A deed conveying the property of respondent to a trustee was read in evidence, and this fact is relied upon as of some importance, in the argument. If the deed could have any bearing on the case under any circumstances, as it was executed and delivered after this proceeding was instituted it could have no special bearing on the case.

The judgment of the Appellate Court will be reversed, and the judgment of the circuit court affirmed.

*Judgment reversed.*

Mr. JUSTICE BAILEY, dissenting:

In my opinion the judgment of the Appellate Court should be affirmed. Whatever may be the general equity jurisdiction of the Circuit Court in relation to the appointment of trustees and the administration of trusts, in this case such jurisdiction was not involved. The Circuit Court was exercising a mere statutory jurisdiction by appeal from the County Court. That jurisdiction, in my opinion, extended merely to a trial *de novo* of the question which had already been tried by the County Court, viz: whether Mary T. Snyder was a distracted person, and the embodying of its finding on that question in a proper

order or judgment, and such order or judgment being entered, all the purposes of the appeal were accomplished, and the matter should then have been remanded to the County Court for further proceedings. Everything beyond this constituted an exercise by the Circuit Court of an original rather than an appellate jurisdiction.

When the appeal was taken the County Court had not appointed a conservator, and, as we may presume, had not reached that stage in the proceeding. The appeal brought up for review, or for trial *de novo*, merely the matter which had already been passed upon by the County Court, and could not have the effect of bringing up, by anticipation, such orders or proceedings as that court might enter or take as a proper sequence of the judgment appealed from. If the Circuit Court, as a part of its appellate jurisdiction, could appoint a conservator, it might, upon the same principle, have gone further, and retained the entire proceeding in its own hands for all purposes of administration. That its doing that would have been improper seems to be conceded. Upon the same principle it should be held that, as soon as it had tried the question of the sanity of the person alleged to be distracted and found her to be insane, and embodied such finding in a proper judgment, the matter should have been at once remanded to the County Court for the appointment of a conservator and the administration through him of the estate of the person so adjudged to be distracted.

MAGRUDER, C. J.: I concur in the views expressed by Mr. Justice BAILEY.