Filed April 27, 1893.

---

No. 16,812.

HAMRICK *v.* THE STATE, EX REL. HAMRICK.

EVIDENCE.—*Opinion Evidence.*—*Unsoundness of Mind.*—*Incapability of Managing Estate.*—*How Proven.*—Where the matter in issue is the soundness of the defendant's mind and his ability to manage his estate, witnesses may testify, giving their opinion, as to the soundness or unsoundness of the defendant's mind, and the peculiarity of unsoundness, if any, may be given; but whether the defendant is capable of managing his estate, is a question for the jury, and opinion evidence to that effect would invade the province of the jury, and

would be incompetent. Opinion evidence is not competent upon a point which it is the duty of the jury to determine.

INSTRUCTIONS TO JURY.—*Unsoundness of Mind.*—*Capability of One to Manage Her Own Estate.*—*Guardian.*—Where the jury, in an action to have a guardian appointed because of the defendant's inability to manage her estate, was instructed, in substance, that if the impairment of the defendant's mind is such that she can not resist the entreaties of others when her judgment does not approve; or, if from such impairment, she is incapable of conducting the ordinary business affairs of life with reasonable prudence and safety from her own folly and the fraud of others, then you should find her a person of unsound mind and incapable of managing her own estate; such instruction is clearly right.

From the Hendricks Circuit Court.

*T. J. Cofer, C. C. Hadley, W. N. Harding, A. R. Hovey* and *D. W. Howe,* for appellant.

*G. W. Brill* and *G. C. Harvey,* for appellee.

HACKNEY, J.—This appeal is from an adjudication that the appellant is of unsound mind and incapable of managing her estate. The proceeding in the circuit court was for the appointment of a guardian.

In the course of the trial the court permitted the following questions and answers of witnesses on behalf of the appellee:

"From your acquaintance with Mrs. Hamrick, and the facts you have related to the jury, state whether or not, in your opinion, she is, or is not, a person of unsound mind to that degree as to render her incapable of conducting the ordinary affairs of life, and render her subject to her own folly or the fraud of others? Ans. To that extent I will answer yes."

On the cross-examination by the appellee of a witness for appellant, this question and answer were permitted:

"I will ask you if you don't believe this woman is liable to be euchred out of her property by being imposed upon by her children or others, if she is left without any one

to assist her in managing her property?    Ans.  I think such thing might be.''

It is no longer an open question in this State, that a non-expert witness may express an opinion as to the soundness of mind of the person under inquest, but we have found no case in the reports of this State permitting the opinion of a witness upon the capacity of such person to conduct the ordinary affairs of life.

The issue in a case like this, under section 2545, R. S. 1881, is that the defendant is ''of unsound mind and incapable of managing his own estate.''  Mere unsoundness of mind is not sufficient, but it must include, or be of that degree, that the subject is not capable of managing his estate.

The court has permitted these witnesses to state to the jury that, in the case of this subject, the degree of incapability required has been reached.

In permitting an opinion by a non-expert witness as to sanity or insanity, the rule is said to grow out of the necessity arising from an inability of the witness to describe the appearance, the action, the language, and the manner of the subject with such precision and minute detail as to possess the jury of all the knowledge of the witness, and thereby enable the jury to form that opinion instead of receiving the opinion of the witness.   In this state it is so well and so often decided, as to need no citation of the cases, that this opinion of the witness must proceed from the facts and circumstances which the witness shall have given to the jury of his acquaintance with and observation of the subject, not including, of course, those observations not susceptible of description.

The ordinary affairs of life, and the capacity essential to transact them, are not subjects involving any rule of science or art.   They are within the comprehension and common observation of that class of men who constitute

the jury.   They do not require a particular knowledge of
the person whose capacity is under investigation.  Whether
that capacity exists or not is peculiarly a question for the
jury.    It is the very question to be passed upon by the
jury.    When the particular phases of unsoundness of
mind, the special characteristics of the individual, are
given, the jury must raise the standard, and determine
whether the essential capacity exists.   It would hardly be
contended that the abstract question of what is sufficient
mental capacity to transact the ordinary affairs of life,
could be made the subject of testimony.   Much less can
it be made the subject of opinion evidence from those
whose station in life and business occupations give them
no better means of knowledge than the jurors possess.
The character of the derangement being made known to
the jury by the witnesses, it then becomes the privilege
and the duty of the jury to determine whether that de-
gree of capacity remains which is essential to the de-
mands of the ordinary business affairs.

An opinion may not be given upon the point which it
is the duty of the jury to determine.   *Chicago, etc., R.
R. Co.* v. *Modesitt,* 124 Ind. 212; *Yost* v. *Conroy,* 92 Ind.
464.

We would not be understood as holding that the opin-
ion of the witness as to the unsoundness of mind may
not be given; nor do we say that it is improper to in-
quire as to the form of insanity and the peculiarities of
the derangement, but what we do say is that it is an is-
sue in this case as to whether—from the form of insanity,
or the peculiar characteristics of derangement, if any,
under which this lady suffers—she is "incapable of man-
aging her estate."   We have said that this issue was for
the jury, and that opinion evidence was not competent
to go to the jury upon which to make a decision of this
issue.   The authorities sustain this view.

In *Goodwin* v. *State*, 96 Ind. 550, a prosecution for murder, it was proposed to prove by a non-expert witness that the accused could not control his appetite for intoxicating liquor, the question of insanity being an issue. The court said: "It is not competent to ask a witness whether a man has capacity to do or to refrain from doing a particular thing. It is proper to inquire generally as to mental capacity, but it is not proper to inquire whether there is or is not capacity to do a specific act, as, for instance, to execute a will, make a contract, or commit a designated crime."

In *Staser* v. *Hogan*, 120 Ind. 207, involving testamentary capacity, the witness was called to prove that the testator, acting as an attorney, had tried a cause "well and shrewdly." The court rejected the offer, and this court said the action was not error, that "it called for the mere opinion of the witness. The witness was allowed to detail all that the deceased did in the management of the cause, and to give his opinion as to the condition of the testator's mind at that time. This was all the appellants were entitled to." See 2 Taylor on Ev., 1229; *Dyer* v. *Dyer*, 87 Ind. 13.

In *Farrell's Admr.* v. *Brennan's Admx.*, 32 Mo. 328, the question asked was: "From your knowledge of him, would you think his mind sound enough to make a will?" The court said: "The question is objectionable as tending to elicit from the witness his opinion of the *quantum* of intelligence, or mental capacity, that is necessary to enable a party to make a legal disposition of his estate. In other words, it involves a question of law for the court to determine, and not the witness."

In *Runyan* v. *Price*, 15 Ohio St. 1, the question asked was: "State what your opinion was, on the evening Bowen called upon you to witness the will, as to the sanity or insanity of William Runyan, or his capacity to

make a will.'' The court said, p. 14: ''The question called upon the witness to state what his opinion was as to the capacity of the testator to make a will. This branch of the inquiry involved a question of law and fact, and, *to the extent that capacity was involved in the issue,* the very question to be determined by the jury.''

In *De Witt* v. *Barly,* 17 N. Y. 340, the question at issue was the mental capacity of a grantor. In the course of the opinion by SELDEN, J., it is said of *Gibson* v. *Gibson,* 9 Yerg. 329: ''There, upon an inquiry as to the competency of a testator to make a will, this question was put to a witness, viz: 'Whether, from the situation in which he saw the old man on that morning, and from the facts he had just stated to the jury, he believed the old man was then in his senses, and capable of making a will,' was rejected. REESE, J., in delivering the opinion of the court, said: 'The latter part of the question, *capable of making a will,* as it involved a question of law and fact, and the very question to be determined by the jury, was entirely illegal.'' The opinion then proceeds:

''Let us now see what was really decided by this court, when this case was before it upon a previous occasion. (5 Seld. 371.) The only exceptions then presented to this court, which could be supposed to involve the question we are considering, were those taken to the decision of the court below. In overruling objections to the inquiries: Whether, in the opinion of the witness, Mr. De Witt, the grantor, first, 'was capable of managing his affairs and business,' and, secondly, 'had capacity to comprehend and transact business.' Did not these questions embrace the whole law, as well as facts of the case? If it can be justly said of a person that he is incapable of managing his affairs, or that he has not capacity to transact business, the law adjudges that all his business transactions are void. The

degree of mental imbecility which will warrant this con-
clusion, is a question of law; and one which has given
rise to much discussion. (*Stewart* v. *Lispenard*, 26 Wend.
255.) An inquiry whether a man is capable of man-
aging his affairs, or has capacity to transact business, to
have any sensible meaning at all, must mean, whether
he is possessed of the lowest degree of intelligence which
would justify his being held legally competent to trans-
act business; because no person is utterly destitute of in-
telligence; and, in one sense, a man can transact busi-
ness as long as he can sign his name or give a verbal di-
rection or assent. Such an inquiry is precisely equiva-
lent to asking, in legal phraseology, whether the person
is *compos mentis*. This is clearly a mixed question of
law and fact; and before it can be answered, the degree
of intelligence essential to legal competency, must first
be determined.''

Clearly, we think, the distinction lies in permitting
opinions as to *what the capacity is* as a question of fact,
and not upon what is *legal capacity*, as a question of law,
or mixed law and fact. The witness gives the capacity;
the court expounds the law to the jury, and the jury ap-
plies the law to the facts, and determines the existence
or nonexistence of legal capacity.

We conclude that the questions asked and answered in-
vaded the province of the jury.

The court's third charge to the jury was as follows:

''But, on the other hand, if you find that from old
age, continued vexation, or any other cause, her mind
has become so impaired as to leave her in a condition
mentally too weak to resist the entreaties of others in
cases where her judgment does not approve, *or* incapable
of conducting the ordinary business affairs of life with
reasonable prudence and reasonable safety from her own
folly and the fraud of others, then you should find her a

person of unsound mind, and incapable of managing her own estate.''

This charge involves two definitions of that degree of unsoundness which incapacitates for the management of one's own estate, viz., where the impairment of mind is such that she can not resist the entreaties of others, where her judgment does not approve; secondly, where, from the impairment she is incapable of conducting the ordinary business affairs of life with reasonable prudence and reasonable safety from her own folly and the fraud of others.

The first of these definitions is not criticised, but it is insisted that the second erects an erroneous standard of intelligence, in that it requires the jury to find legal incapacity where there is not immunity from one's own folly and the fraud of others.

We think the instruction not subject to this criticism. If the second definition had omitted the words, ''and reasonable safety from her own folly and the fraud of others,'' it would have been substantially correct. If from any cause ''her mind has become so impaired as to leave her in a condition mentally * * incapable of conducting the ordinary business affairs of life with reasonable prudence,'' the case is made out. *McCammon* v. *Cunningham*, 108 Ind. 545; *Fiscus* v. *Turner*, 125 Ind. 46; *Wray* v. *Wray*, 32 Ind. 126.

In the first of the above cases it is said: ''It may be proper to add that the jurisdiction of the court to appoint a guardian is not confined to cases of insanity, idiocy or lunacy, strictly so called, but extends to every case of mental unsoundness or imbecility, which has reached such a degree, from whatever cause, as renders it's subject incapable of conducting the ordinary affairs of life, and leaves him in a condition to become the victim of his own folly, or the fraud of others.''

If this holding is correct, and we do not doubt it, the instruction is clearly right. The fact that it requires more to be found than is necessary to the cause stated in the petition, is not the subject of complaint by the appellant. The words, "and reasonable safety from her own folly and the fraud of others," do not limit the preceding elements of the second definition; they do not shorten the standard of mental capacity already defined.

We are urged to consider the evidence, and reverse the judgment on the supposed absence of evidence to support the verdict.

There was a sharp conflict in the testimony, and we are not at liberty to pass upon its weight.

The judgment should be reversed for the improper admission of evidence, and it is therefore ordered that said judgment be reversed, and that the circuit court be directed to sustain appellant's motion for a new trial.

Filed April 27, 1893.