SCHUMAN *v.* WESTBROOK.

4-7394                                          181 S. W. 2d 470

Opinion delivered June 26, 1944.

496

*Hugh M. Bland,* for appellant.

*L. E. Lister,* for appellee.

McFADDIN, J. This is a suit by an alleged insane person to redeem her property sold for delinquent taxes; and the redemption is resisted on (1) the denial of insanity, (2) the plea of limitations, and (3) the plea of innocent purchaser. Also there is the question of the time when the redemptor becomes entitled to the rents.

Anna Laurie Westbrook was the owner by will of the property here involved, consisting of two lots and a house thereon in Fort Smith. In 1932, the property was forfeited to the State for the delinquent taxes of 1931.

The State received the deed in 1934; and in October, 1937, appellant, Manie Schuman, received a deed from the State upon payment of $80.12. In February, 1940, Schuman conveyed the property to Maurice Kaplan by quitclaim deed. From July, 1938, until after the filing of this suit, either Schuman or Kaplan was at all times in actual possession by a tenant.

On September 15, 1941, this suit was filed by Anna Laurie Westbrook, an insane person, acting by her next friend, Lucille Westbrook; and there was: (1) an allegation of the insanity of Anna Laurie Westbrook at all times involved, (2) an allegation of the tender of taxes, and (3) a prayer for redemption and also for an accounting of rents. Both of the appellants (1) denied the insanity of Anna Laurie Westbrook, (2) pleaded adverse possession under § 8925 of Pope's Digest, (3) pleaded three years' adverse possession, and (4) denied plaintiff's right to any rents. In addition, Kaplan pleaded that he was an innocent purchaser of the property for value and without any notice or knowledge of any defect in the title.

The chancery court rendered a decree of redemption in favor of the plaintiff, and found that Schuman had received rents totaling $553 and had expended for taxes and improvements a total of $451.37. Therefore, in addition to ordering redemption, the chancery court rendered judgment against Schuman for $101.63. From that decree comes this appeal, presenting the questions which we now list and discuss:

I. *Was Anna Laurie Westbrook Insane?*

At the time of the trial in the chancery court, Anna Laurie Westbrook was a woman thirty-two years of age. There had never been any previous inquisition into her mental status. She had never been declared insane and therefore had no guardian. (See § 7543 *et seq.* of Pope's Digest.) But such an order, if made, would only have been *prima facie* evidence in a suit like the one here (*Eagle* v. *Petterson,* 136 Ark. 72, 206 S. W. 55, 7 A. L. R. 553; *Barkheimer* v. *Lockhart,* 139 Ark. 223, 213 S. W.

381). The chancery court had authority to determine mental status in this case irrespective of any previous adjudication by the probate court.

In some jurisdictions there are three types of mental status, being: sanity, incompetency, and insanity (see 28 Am. J. 656 *et seq.*); but in this State we have only two types of mental status recognized by law, being: sanity and insanity. The question here is whether the plaintiff was sane or insane. Many authorities agree that it is difficult to define insanity, and that it is a social or legal term rather than a medical term. In 32 C. J. 593 it is said: " 'Insanity' differs so much in kind and degree that no precise definition can be given applicable to the varying circumstances of every case. . . . Upon questions of insanity the law attempts to ascertain whether a party is or is not possessed of such soundness of mind as renders him competent to do, or relieves him from the responsibility for doing, certain acts. In a legal sense, mental soundness is sanity; mental unsoundness is insanity. In this sense insanity is defined as such unsoundness of mental condition as, with regard to any matter under action, modifies or does away with individual legal responsibility or capacity."

Our own case of *Pulaski County* v. *Hill*, 97 Ark. 450, 134 S. W. 973, is one of our landmarks on this subject; and Mr. Justice FRAUENTHAL's words, as there contained, remain, even after the lapse of years, still the clearest expression on the subject, and directly in point in the case at bar. We quote at length:

"It is earnestly contended by counsel for defendants that the finding of the chancellor that John Hill was an insane person at the time of the tax sale or at any time thereafter is contrary to the weight of the testimony adduced upon the trial of this case. It is difficult to define with accuracy the limits of that mental incapacity which under the law renders one insane. An insane person is one who is of unsound mind, and our statute provides that a 'person of unsound mind includes every person

who is a lunatic, idiot or deranged.' Kirby's Digest, § 7812.

"But at last the law furnishes no definite enumeration of the mental powers and no exact measure by which to determine the degree of their exercise in order to decide whether or not an individual is of sound or unsound mind. There are numerous civil proceedings where insanity or mental incapacity may be shown, and the rule for establishing the degree of the insanity necessarily depends upon the purpose for which the insanity is to be proved. It may be that the object of proving insanity is to annul a contract, or to defeat the execution of a will or to appoint a guardian to take charge of the estate of the insane person. The rule for establishing the degree of insanity in these various cases varies with the case. But the question in all such cases where incapacity arising from defect of the mind is alleged is, not whether the mind is itself diseased or the person is afflicted with any particular form of insanity, but rather whether the powers of the mind have become so affected, by whatever cause, as to render him incapable of transacting business like the one in question. As a general rule, it may be stated that, in order to have that measure of capacity required by law to be of sound mind, a person must have capacity enough to comprehend and understand the nature and effect of the business he is doing; and where it is clearly made to appear that the mental incapacity and imbecility is of such a degree as to render the person unable to conduct the ordinary affairs of life and leaves him in a condition to be the victim of his infirmity, then such person is in contemplation of law not of sound mind. Weakness of understanding is not alone sufficient to show mental unsoundness if capacity remains to see things in their true relations and where the individual has a moderate comprehension of his immediate duties and of the value and use of his property. But, as is said by MARSHALL, J., in the case of *Prather* v. *Naylor's Adm'r*, 1 B. Monroe 244, the criterion in determining whether or not the individual is of sound mind 'rests upon the question whether the individual is mentally competent of

rational government of himself and his affairs.' 1 Clevenger on Med. Jur. of Insanity, § 244; *Young* v. *Stevens*, 48 N. H. 133, 2 Am. Rep. 202, 97 Am. Dig. 592; In re *Storick*, 64 Mich. 685, 31 N. W. 582; *Hamrick* v. *Hamrick*, 134 Ind. 324, 34 N. E. 3; *King* v. *Cummins*, 60 Vt. 502, 11 Atl. 727; *Snyder* v. *Snyder*, 142 Ill. 60, 31 N. E. 303; *Kelly's Heirs* v. *McGuire*, 15 Ark. 555; *Beller* v. *Jones*, 22 Ark. 92. And the opinions of witnesses not expert are competent to prove mental capacity or incapacity when the facts or circumstances are disclosed upon which they found their opinions. *Beller* v. *Jones, supra; King* v. *Cummins, supra; Kilgore* v. *Cross*, 1 Fed. 578.

"In the case at bar the matter involved related to the payment of taxes upon property. That was one of the matters attending the transaction of ordinary business. The object and purpose of proving insanity in this case would be to show that John Hill did not have the mental capacity to understand and appreciate the fact that the taxes should be paid upon his property; in other words, the true and proper test of whether or not he was of sound mind under the testimony and nature of this case was whether or not he had the mental capacity to transact ordinary business and to take care of and manage his property. If he was mentally incapable of understanding and acting rationally in the ordinary affairs of life and in the management of his property, then he was not of sound mind within the meaning of the statute granting him time until such disability should be removed in which to redeem his land from tax forfeiture.

"We do not deem it desirable to set out in any detail the testimony relative to the mental condition of John Hill. The testimony discloses that almost from his infancy he was a mental imbecile, and on this account was the sport and plaything of his associates. He was not totally incapable of taking care of himself, but he was wholly incompetent on account of his mental unsoundness to rationally manage his affairs or to care for and protect his property in a rational manner. He did not understand the ordinary affairs of life in their true relations, and was unable to form correct conclusions as to

them. He was mentally incapable of transacting business, or to comprehend the nature and effect of the business of paying or failure to pay taxes on his property. Upon an examination of all the evidence we feel a conviction that he did not have that mental capacity which is found in a sound mind, although he was not technically an idiot or lunatic. This was his mental condition at the time of said tax sale and continuously from that date to his death. He was therefore an insane person, within the meaning of the statute which granted to him the right to redeem his land from tax sale within the period named therein.''

Change the name from ''John Hill,'' in the paragraph just above, to ''Anna Laurie Westbrook,'' and the statements in the quotation are true in the case at bar. Three disinterested and unrelated witnesses testified about the mental status of Anna Laurie Westbrook. One was the school principal who had known her for over twenty years. He said that she had never been normal. She never could pass any of her courses. ''Her mentality was notoriously below normal, and it was a matter of frequent comment by the teachers.'' This witness unhesitatingly pronounced her incompetent. Another witness, a next door neighbor of the Westbrook family, and one whose acquaintance also covered a period of over twenty years, said that the plaintiff was mentally incompetent and unable to handle any business affairs. Said this lady of Anna Laurie Westbrook: ''She never impressed me as being a normal child. She talked foolishly a lot of times and would just grin and laugh about nothing. She always impressed me as a child with a very immature mind.'' The third witness was a businessman who lived only a few blocks from the Westbrooks. He had known the plaintiff fifteen years and said she did not have sufficient mental ability to transact business affairs or to pay taxes.

In the light of this evidence, and in view of the fact that no evidence was offered in contradiction, we cannot say that the findings of the chancery court are against the preponderance of the evidence: so we affirm so much

of the decree as held that Anna Laurie Westbrook was mentally incompetent and insane.

II. *Did Anna Laurie Westbrook Have the Right to Redeem?*

Having affirmed the finding of insanity, we logically come to the question of redemption; and this means whether there is a savings clause for an insane person in a case like this one. Schuman and Kaplan, together, were in adverse possession of the property under a State deed containing a legally sufficient description at all times from July, 1938, until after September 15, 1941; and they claim that § 8925 of Pope's Digest has no savings clause for insane persons. They cite *Hall* v. *Porter*, 81 Ark. 476, 99 S. W. 687; and *Sims* v. *Cumby*, 53 Ark. 418, 14 S. W. 623, as cases holding that there is no savings clause for infants or insane persons. We will first dispose of these cases and then demonstrate that there is a savings clause for an insane person in a case like the one at bar.

In *Hall* v. *Porter*, this court held that under the Overdue Tax Act of March 12, 1881, there was no savings clause for a person of unsound mind; but in the case at bar the lands were not sold under the Overdue Tax Act of 1881; and so that case has no application to this case. Even if there had been a confirmation in the chancery court under Act 119 of 1935 still an insane person would have a right to redeem, because § 9 of Act 119 of 1935, as amended by Act 318 of 1939, contains a savings clause for insane persons. Therefore we dispose of cases like *Hall* v. *Porter*, and *Ry. Co.* v. *Burke*, 53 Ark. 430, 14 S. W. 622, by pointing out that the statute on which those cases were based is not involved in the case at bar.

*Sims* v. *Cumby*, 53 Ark. 418, 14 S. W. 623, is urged by appellants. That case, decided in 1890, specifically held that under the two-year statute of limitations (which is now 8925 of Pope's Digest) there was no savings clause for persons under disability. If the statutes were worded today as they were at the time of *Sims* v. *Cumby*, then appellants would be correct. But there has

been an amendment to the statutes which displaces the holding in *Sims* v. *Cumby*. At the time of the decision in *Sims* v. *Cumby* the savings clause for persons under disability was contained in § 4489 of Mansfield's Digest which section was taken from the Act of 1844, and which provided a savings clause for persons under disability *only in causes of action recognized by law in 1844*; and Mr. Justice HEMINGWAY pointed out, in *Sims* v. *Cumby,* that the two-year statute of limitations could not apply in that case because of the peculiar wording of § 4489 of Mansfield's Digest, and because the two-year statute of limitations was not enacted until 1857. This § 4489 of Mansfield's Digest became § 4833 of Sandels and Hill's Digest of 1894. As previously pointed out, the opinion in *Sims* v. *Cumby* was rendered in 1890; and by Act 123 of 1899 the Legislature amended § 4833 of Sandels and Hill's Digest (§ 4489 of Mansfield's Digest) so as to make the savings clause apply to *any cause of action whether it existed prior to the 1844 savings clause, or afterwards*; and this Act 123 of 1899 is now § 8939 of Pope's Digest. So it is clear that the said Act of 1899 made the savings clause for insane persons apply in the very situation to which it did not apply in *Sims* v. *Cumby*. In other words, the law as announced in *Sims* v. *Cumby* was changed by the Act of 1899; and therefore *Sims* v. *Cumby* affords the appellant no support in the case at bar.

Even though *Sparks* v. *Farris,* 71 Ark. 117, 71 S. W. 255, 945, was decided in 1902, still it arose prior to 1899, and was tried under the law as it existed prior to the Act of 1899; so *Sparks* v. *Harris* affords appellants no support.

With these cases disposed of, we point out that there is a savings clause that protects Anna Laurie Westbrook in the case at bar; and this clause is found in § 13860 of Pope's Digest. The right of an insane person to redeem, in a case like the one here, has existed at all times since the enactment of § 115 of Act 124 of 1873 (commonly called the Revenue Act of 1873); and this § 115 became § 5197 of Gannt's Digest, and, with subsequent changes

and amendments, is now § 13860 of Pope's Digest. One of the effects of Act No. 123 of 1899 was to allow the savings clause in the favor of infants and insane persons to apply even against the section that is now § 8925 of Pope's Digest. We have consistently held that there is a savings clause for infants and insane persons. *Hodges* v. *Harkleroad,* 74 Ark. 343, 85 S. W. 779; *George* v. *Hefley,* 182 Ark. 678, 32 S. W. 2d 445; *Hisey* v. *Sloan,* 180 Ark. 797, 22 S. W. 2d 1005; and cases there cited.

Therefore, we affirm so much of the decree of the chancery court as found that Anna Laurie Westbrook had not lost her right of redemption by a lapse of time.

III. *What of Kaplan's Plea of Innocent Purchaser?*

Kaplan received a quitclaim deed to the property from Schuman on February 6, 1940; and Kaplan claims that at the time of his purchase he was not put on notice of any offer of redemption and that he was an innocent purchaser. To sustain his contention he cites the case of *Jefferson Land Company* v. *Grace,* 57 Ark. 423, 21 S. W. 877. But that case involved a proceeding under the Overdue Tax Act of 1881, and we have previously pointed out that the case at bar is not under that Act; so the cited case has no application to the case at bar.

This court has many times held that the right of a person under disability (such as minority or insanity) to redeem his land, in an ordinary state and county tax forfeiture case as is the case here, runs with the land, and any person acquiring the land takes with notice thereof. As said by Mr. Justice Wood in *Bradbury* v. *Johnson,* 104 Ark. 108, 147 S. W. 865, Ann. Cas. 1914C, 419:

"There can be no such thing as an innocent purchaser of land at a tax sale, or from one who buys at such sale, as against the statutory privilege of redemption. The statute makes no exceptions, and there are no restrictions or limitations upon the right to redeem except as to the time in which it shall be exercised. As was said in *Neil* v. *Rozier,* 49 Ark. 551, 6 S. W. 157, 'a sale of

the land by the tax purchaser does not displace the right to redeem.' The right, within the time, is absolute, and the provisions of the statute are to be liberally construed to effectuate its purpose in preventing a permanent forfeiture of the estate of a minor. *Woodward* v. *Campbell,* 39 Ark. 580; *Neil* v. *Rozier, supra.*

"All the world must take notice of the statute granting to a minor the privilege of redemption from a sale for taxes."

And in *Hisey* v. *Sloan,* 180 Ark. 797, 22 S. W. 2d 1005, Chief Justice HART said: "Our statute authorizes the sale of land delinquent for nonpayment of taxes, and it also contains a saving clause, granting to minors the right to redeem the land from the tax sale within two years after the expiration of their disabilities as minors. This court has uniformly held that all the world must take notice of the statute granting to minors the privilege of redeeming the land from a sale for taxes. *Bender* v. *Bean,* 52 Ark. 132, 12 S. W. 180, 241; *Seger* v. *Spurlock,* 59 Ark. 147, 26 S. W. 819; *Hodges* v. *Harkleroad,* 74 Ark. 343, 85 S. W. 779; *Bradbury* v. *Johnson,* 104 Ark. 108, 147 S. W. 865, Ann. Cas. 1914C, 419; and *Lightle* v. *Laws,* 123 Ark. 537, 186 S. W. 73."

The same statute (§ 13860) that contains the savings clause for minors (as mentioned in the last quotation) also includes insane persons; so we affirm so much of the decree of the chancery court, in the case at bar, as denied Kaplan's plea of innocent purchaser.

IV. *What of the Judgment Against Schuman for Rents?*

It will be recalled that Schuman had received as rents a total of $553; and had expended for the deed and all subsequent taxes and improvements, and interest thereon, a total of $451.37; and the chancery court not only allowed the plaintiff to recover the property by redemption, but also rendered judgment against Schuman for $101.63 as the excess of receipts over disbursements. This part of the judgment is assigned as error, and we find that there is merit in this assignment.

In *Hisey* v. *Sloan,* 180 Ark. 797, 22 S. W. 2d 1005, Chief Justice HART said:

"Without redeeming, the minors hold no present interest, and can only assert a right to the rents after they have offered to redeem. *Lightle* v. *Laws,* 123 Ark. 537, 186 S. W. 73; *Bender* v. *Bean,* 52 Ark. 132, 12 S. W. 180, 241; and *Seger* v. *Spurlock,* 59 Ark. 147, 26 S. W. 819.

"These authorities hold that the tender made by the owner to the purchaser is the point at which the title changes, and the positions are reversed. Up to that time, no rents are due from the purchaser, while all moneys paid out for taxes and the value of all the improvements are due to him. Improvements made after an offer to redeem, and taxes paid afterwards, except by contract, are not charges against the owner or on the land, and the purchaser in possession is bound for rents accruing after that date."

The complaint in the case at bar was filed September 15, 1941, and was verified and contained an allegation of tender. The decree of the chancery court evidently overlooked the rule in *Hisey* v. *Sloan, supra,* and proceeded on the theory that Schuman was liable for rents for the full period of his possession. This was error. He was only liable for rents from the time of tender, and he could offset against these rents all the taxes paid out by him prior to the tender and also the value of all the improvements prior to the tender.

It follows, therefore, that so much of the decree as adjudged Anna Laurie Westbrook entitled to rents for the full period of 1937 to 1942 was error; and all that part of the decree concerning rents, improvements, and taxes is reversed and remanded to the chancery court with directions:

(1) To determine all rents collected by Schuman and Kaplan prior to the tender, and to award all such to them.

(2) To determine the amount of all rents collected by Schuman and Kaplan subsequent to the tender.

(3) To determine all taxes and the value of all improvements made by Schuman and Kaplan prior to tender.

If the amount of item 3, just above, is greater than the amount of item 2, then the chancery court will decree that Westbrook is to pay the said difference to Schuman and Kaplan, which difference, until paid, shall be a lien on the land and required to be paid to make a complete redemption. If the amount of item 3 is less than the amount of item 2, then Schuman and Kaplan are to pay to Westbrook the said difference.

The cause is also remanded for any further proceedings as may be necessary under the principles of equity and not inconsistent with this opinion. Since the appellants denied the plaintiff's right of redemption, which is the substantial question of the case, all the costs of both courts are adjudged against appellants.

It follows, therefore, that the decree of the chancery court is in part affirmed, as herein stated, and is in part reversed and remanded with directions, as herein stated.

The Chief Justice does not agree that the evidence was sufficient to show appellee's insanity, and therefore dissents.