**Mary L. BYNES, Appellant,**

v.

**Joseph T. SCHEVE, et al., Appellees.**

No. 80–78.

District of Columbia Court of Appeals.

Argued Dec. 16, 1980.

Decided Sept. 10, 1981.

Benjamin F. Amos, Washington, D. C., for appellant.

Kurt Berlin, Washington, D. C., for appellees.

Before MACK and FERREN, Associate Judges, and GALLAGHER,* Associate Judge, Retired.

FERREN, Associate Judge:

This case presents a single question: whether the trial court erred in rejecting appellant's claim that she suffered "legal disability" and, therefore, under the terms of D.C.Code 1973, § 47–1003, was entitled to an extension of time to redeem her property from a tax sale. Because the trial court did not specify the definition of "legal disability" or standard of proof it used in rejecting appellant's claim, we are unable to determine whether the court properly weighed the evidence and applied the law. Accordingly, we reverse and remand for further proceedings.

I.

Appellant, Mary L. Bynes, then owner of the property known by the street address of 1222 47th Place, N.E., failed to pay real estate taxes for fiscal year 1974 (indeed, for fiscal years 1973 to 1976). The District of Columbia Department of Finance and Revenue notified appellant of the unpaid taxes by mailing a delinquency notice in July 1974. When the taxes remained unpaid, the District gave notice of an impending tax sale of the property by publication and by

---

* Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

regular mail sent to appellant at the proper address. Neither appellant nor anyone acting on her behalf paid the delinquent 1974 taxes; the District accordingly sold the property for delinquent taxes to appellees Theodore J. and Geraldine E. Scheve on January 24, 1975.

Because no one came to redeem the property, on December 1, 1976, the District sent appellant by registered mail a notice that the statutory two-year redemption period soon would expire and that the District then would issue a deed to the tax purchasers. On June 15, 1977, after the redemption period had ended and appellees had paid all the taxes and other charges owed on the property, the District issued a tax deed in their favor.

On February 9, 1978, appellees sued for a declaration that the tax deed vested in them free and clear title in fee simple absolute. At trial, at the close of appellees' case, appellant moved for dismissal on the ground that she had not received the various tax notices. The trial court denied the motion. At the end of the trial, the court concluded that the District had complied with the requirements of the tax sale statute. The court recognized, however, that the defense had rested not only on lack of actual notice but also on appellant's "inability to have understood any notice which

might have been received." The court therefore gave appellant ten days to submit "anything in the case law which supports your position that the inability of a party who is sent such notice to understand that notice can defeat the—a tax sale otherwise completely complied with in this case in the findings . . . ." [1]

Appellant duly submitted a memorandum of points and authorities urging that appellant suffered a "legal disability" and therefore still was entitled to redeem the property under D.C.Code 1973, § 47–1003. Appellant asked the court to define "legal disability" as inability "properly to care for [one's] property," the standard for appointment of a conservator. Id. § 21–1501. Appellees contended that "legal disability" under the tax sale statute is the equivalent of insanity and that appellant was not an "idiot, non compos, lunatic, [or] insane person." Id. § 49–207.

On December 7, 1979, the trial court ruled that notice to appellant had comported with the tax sale statute and regulations and with due process. The court found "[t]hat [appellant] cannot read. Her son handles all of her business. When something important came in the mail, she showed it to her son to get him to read it . . . . Surely this [the 1976 notice of expiring redemption period] was sufficiently important to show

1. At trial, appellant had testified that she had very poor vision and no longer could read or write. Her son, John Henry Williams, and occasionally her grandson, John Henry Knight, Jr., handled all her business matters. Appellant did not recall signing the receipt for the 1976 notice of expiring redemption period and could not identify the signature "Mary L. Bynes" on the receipt as her own.

Williams, an automobile mechanic with a seventh-grade education, confirmed that he lived with his mother and had begun taking care of her business matters after her husband had left. Appellant was at home during the day and would take in the mail, sometimes putting it on the "gossip bench" in the front hall and sometimes in the china closet. Once appellant, without consultation, discarded a drawer full of Williams' papers relating to nonsupport.

Williams further testified that he had paid off the mortgage on the property on behalf of his mother in 1970 or 1971. On September 7, 1972, he redeemed the property from a prior tax sale to appellees based on delinquent taxes

for fiscal year 1971; he testified that he had learned of the delinquency only when the prior mortgage holder had sent a letter noting the taxes due. Williams could not identify the signature on the 1976 notice of expiring redemption period as that of appellant and stated that he had seen no notice of unpaid real estate taxes between 1972 and 1977. He learned about the delinquencies after 1972 when he found on the "gossip bench" the 1977 tax bill stamped "Important. Prior Taxes Unpaid." When he went to the Municipal Building to pay the taxes, he was told the property no longer belonged to his mother.

Appellant's grandson, John Henry Knight, Jr., who at the time of the trial was a premedical student at Howard University, testified that he had lived with appellant until about four years before trial. Thereafter, Knight visited appellant about once every three months; sometimes appellant would ask him to read something and explain it to her. Knight said that he never had seen a tax notice or bill come to the property.

to [her] grown son or grandson." The court concluded, "[Appellant]'s effort to rely on alleged mental weakness and physical disability as a basis to avoid the validity of the sale . . . is not supported by the evidence of record." The court therefore confirmed and ratified the tax deed and declared it to be a deed conveying a fee simple absolute to appellees. Bynes timely appealed this judgment. *See* D.C.Code 1973, § 11–721(a)(1); D.C.App. R. 4 II(a)(1).

## II.

■ Appellant urges that the trial court erred in rejecting her claim of "legal disability." [2] Because the court did not specify

2. Appellees do not dispute the propriety of the trial court's permitting appellant, in effect, to amend her answer to conform to the evidence regarding "legal disability." *See, e. g., Moore v. Moore*, D.C.App., 391 A.2d 762, 768–69 (1978); Super.Ct.Civ.R. 15(b); note 1 *supra. See generally*, 6 C. Wright & A. Miller, Federal Practice and Procedure §§ 1491–95 (1971 & Supp.1981).

3. Appellant does not vigorously dispute the trial court's finding that she received the various tax notices sent by the District. The trial court specifically found that the District had notified appellant of the pending tax sale "by written notice and by publication in newspapers in accordance with the statute and regulations." The court discredited the testimony of appellant's son and grandson that they had seen no notices about unpaid real estate taxes and further found that appellant personally had received the 1976 notice of expiring redemption period.
 Although appellant claimed lack of receipt of these notices, *see* note 1 *supra*, the trial court's findings are not "plainly wrong or without evidence to support [them]." D.C.Code 1973, § 17–305(a); *see* Part I. *supra*. Based on these findings, the court properly concluded that notice comported with the tax sale statute and regulations and (putting the issue of appellant's "legal disability" to one side) with due process. *See Boddie v. Robinson*, D.C.App., 430 A.2d 519, 521–22 (1981); *Watson v. Scheve*, D.C. App., 424 A.2d 1089, 1092 (1980); *Shenandoah Corp. v. Pringle*, D.C.App., 385 A.2d 748, 749–50 (1978); *Coleman v. Scheve*, D.C.App., 367 A.2d 135, 137–39 (1976); *Potomac Building Corp. v. Karkenny*, D.C.App., 364 A.2d 809, 812 (1976) (per curiam), *cert. denied*, 431 U.S. 921, 97 S.Ct. 2192, 53 L.Ed.2d 234 (1977); *Dodson v. Scheve*, D.C.App., 339 A.2d 39, 40–41 (1975) (per curiam), *cert. denied*, 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976); *Moore v. Government of the District of Columbia*, D.C. App., 332 A.2d 749, 751 (1975) (per curiam).

the evidentiary or legal standard that it used to measure "legal disability," we reverse and remand for further proceedings.[3]

When the District of Columbia sells a property because the owner has failed to pay real estate taxes, the owner normally has two years from the date of sale in which to redeem the property. *See* D.C. Code 1973, §§ 47–1003, –1005. The tax sale statute, however, extends the redemption period for "persons under legal disability" for "one year . . . after the removal of such legal disability . . . ." *Id.* § 47–1003.[4]

Four days before the ruling in the present case, this court ruled—apparently

Appellant does not raise, and we do not decide, the question whether statutory notice to one suffering a "legal disability" would satisfy due process. *See Robinson v. Jones*, D.C.App., 429 A.2d 1372, 1374 n.3 (1981) (ruling on statutory question made consideration of constitutional ground relied upon, in the alternative, by the trial court unnecessary), *affirming Jones v. Monarch Novelty Co.*, D.C.Super.Ct., Civ.No. 7135–77 (Nov. 16, 1979), 108 D.Wash.L.Rptr. 21, 28–30 (1980). *Compare Covey v. Town of Somers*, 351 U.S. 141, 146–47, 76 S.Ct. 724, 727–28, 100 L.Ed. 1021 (1956) (when town officials knew that property owner was incompetent and had no conservator, compliance with normal statutory notice provisions for foreclosure of tax lien did not satisfy due process).

4. D.C.Code 1973, § 47–1003 provides in relevant part:
 Immediately after the close of the sale, upon payment of the purchase money, the said collector of taxes shall issue to the purchaser a certificate of sale, and if the property shall not be redeemed by the owner or owners thereof within two years from the last day of sale, by payment to the collector of taxes of said District, for the use of the legal holder of the certificate, the amount for which it was sold at such sale, exclusive of surplus, and one per centum thereon for each month or part thereof, a deed shall be given by the Commissioner of the District, or his successors in office, to the purchaser at such tax sale, his heirs or devicees [sic], or to the assignee of such certificates, which deed shall be admitted and held to be prima facie evidence of a good and perfect title in fee simple to any property bought at said sale herein authorized: *Provided*, . . . That minors or other persons under legal disability be allowed one year after attaining full age or after the removal of such legal disability to redeem the property so sold, or bid off by the

for the first time—on the statutory provision for extension of the redemption period based on "legal disability." *See Nelson-Bey v. Robinson*, D.C.App., 408 A.2d 999, 1001 (1979).[5] We indicated that one seeking a "legal disability" extension has the burden of proving such disability by a preponderance of the evidence, with or without expert testimony. *See id.* We did not resolve the precise meaning of the term "legal disability," however, for in that case the trial court's findings of fact, which the evidence supported, did not lead to a conclusion that the appellant suffered "legal disability," even under the lenient standard applied by the trial court. *See id.* at 1001–02.

This court recently answered the question which *Nelson-Bey* left open. In *Robinson v. Jones*, D.C.App., 429 A.2d 1372 (1981), *affirming Jones v. Monarch Novelty Co.*, D.C. Super.Ct., Civ.No. 7135–77 (Nov. 16, 1979), 108 D.Wash.L.Rptr. 21 (1980), we defined the term "legal disability" in D.C.Code 1973, § 47–1003 with reference to the statutory standard for the appointment of a conservator, *id.* § 21–1501. *See Robinson v. Jones,*

*supra* at 1373–74.[6] We stated, moreover, "that neither prior adjudication of insanity nor a prior appointment of a conservator are prerequisites to such a showing." *Id.* at 1374.

The conservatorship statute permits appointment of a conservator "[w]hen an adult residing in or having property in the District of Columbia is unable, by reason of advanced age, mental weakness not amounting to unsoundness of mind, mental illness . . ., or physical incapacity, properly to care for his property . . . ." D.C.Code 1973, § 21–1501; see *Carter v. Saxon*, D.C. App., 358 A.2d 639, 641–42 (1976); *In re Kloman*, D.C.App., 315 A.2d 830, 831–32 (1974).[7]

In summary, when a property owner seeks extension of the period for redemption of his property from a tax sale on the ground of "legal disability" under D.C.Code 1973, § 47–1003, the trial court must determine whether that person has proved by a preponderance of the evidence that at the relevant time he was "unable properly to

collector of taxes in the name of the District of Columbia as aforesaid, from the purchaser or purchasers, his, her, or their assigns, or from the District of Columbia, on payment of the amount of purchase money so paid therefor, with eight per centum per annum interest thereon as aforesaid, together with all taxes and assessments that have been paid thereon by the purchaser or his assigns between the day of sale and the period of redemption with eight per centum per annum interest on the amount of such taxes and assessments.

**5.** *Cf. Shenandoah Corp. v. Jackson*, 111 U.S. App.D.C. 410, 411, 298 F.2d 324, 325 (1961) (per curiam) (conservator entitled to redeem property from tax sale during two-year redemption period), *cert. denied*, 370 U.S. 909, 82 S.Ct. 1255, 8 L.Ed.2d 403 (1962).

**6.** *Accord, Schuman v. Westbrook*, 207 Ark. 495, 499, 181 S.W.2d 470, 472 (1944); *cf. Shenandoah Corp. v. Jackson, supra* at 411, 298 F.2d at 325 (court apparently assumed one having need of a conservator is suffering "legal disability"). *See generally* Annot., 65 A.L.R. 582 (1930), *supp.*, Annot., 159 A.L.R. 1467 (1945). *See also Covey v. Town of Somers*, 351 U.S. 141, 146–47, 76 S.Ct. 724, 727–28, 100 L.Ed. 1021 (1956).

**7.** D.C.Code 1973, § 21–1501 provides in full:

When an adult residing in or having property in the District of Columbia is unable, by reason of advanced age, mental weakness not amounting to unsoundness of mind, mental illness, as the latter term is defined in section 21–501, or physical incapacity, properly to care for his property, the Superior Court of the District of Columbia may, upon his petition or the sworn petition of one or more of his relatives or any other person or persons, appoint a fit person to be conservator of his property.

D.C.Code 1973, § 21–501 defines the term "mental illness" as "a psychosis or other disease which substantially impairs the mental health of a person."

This court has not determined precisely when a person must have been incapable of managing his or her property in order to obtain a "legal disability" extension. In *Robinson v. Jones, supra*, we affirmed a finding of "legal disability" when the claimants had been unable to manage their property "at [and since] the time of the tax sale." *Id.* at 1373, *affirming Jones v. Monarch Novelty Co., supra* at 27–28. In *Nelson-Bey, supra*, we affirmed a ruling that the claimant was not "legally disabled" because she had not been incapable of caring for her property " 'at any time prior to the termination of the redemption period.' " *Id.* at 1001 n.1.

care for his property" and thus qualified for appointment of a conservator under *id.* § 21–1501.

### III.

 In the present case the trial court rejected appellant's claim of "legal disability" with the bare conclusion that "[appellant]'s effort to rely on alleged mental weakness and physical disability as a basis to avoid the validity of the sale . . . is not supported by the evidence of record." The parties disputed the meaning of "legal disability," and at the time of the trial court's ruling this court had not defined the term. In light of the parties' disagreement and the unsettled state of the law at the time, we cannot say that the trial court's ruling clearly identified the standard of proof by which the court was measuring the facts or the meaning which the court was giving to the phrase "legal disability." [8]

It appears, moreover, that in deciding that appellant was not "legal[ly] disab[led]," the trial court may have taken into account the role of appellant's son and grandson in managing her business affairs. The statute, however, indicates that "legal disability" is a condition personal to the property owner. *See* D.C.Code 1973, § 47–1003; note 4 *supra.* If the property owner is sufficiently incapable of managing his or her property to qualify for the appointment of a conservator, the property owner suffers "legal disability." *See Robinson v. Jones, supra* at 1373–74. Indeed, if a property owner receives assistance in his or her business affairs from a family member or friend, the need for this assistance may indicate that the property owner is "legal[ly] disab[led]." *See Nelson-Bey, supra* at 1002.

Because we cannot determine whether the trial court considered the evidence in light of the proper evidentiary and legal standards, we reverse and remand this case for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

**8.** In their brief, appellees did not state what standard of "legal disability" they believed the trial court had applied, and at oral argument appellees' counsel agreed that he did not know what definition the trial court had employed.